**EQUITY INVESTMENT CORPORATION, Petitioner**

**v.**

**GOVERNMENT OF THE VIRGIN ISLANDS, Respondent**

Civil No. 256/80

District Court of the Virgin Islands

Div. of St. Croix

June 25, 1982

180

WARNER ALEXANDER, ESQ., Christiansted, St. Croix, V.I., *for petitioner*

JOANN WEBB ANDERSON, ESQ., Department of Law, Christiansted, St. Croix, V.I., *for respondent*

O'BRIEN, *Judge*

## MEMORANDUM OPINION AND JUDGMENT

In May 1979, the petitioner in this case, Equity, purchased approximately 189 acres of land in Estates Barren Spot and Strawberry Hill, St. Croix, for $322,000, in an arms length transaction. It is fair to say that Equity was very pleased with the purchase of this prime land in mid-island at that price. That pleasure turned to dismay, however, when the 1978 and 1979 real property tax assessments were published. For property tax purposes, the 189 acres were assessed in 1978 for $939,204 and in 1979, for $1,038,175.[1] Property taxes based on these assessments were calculated at $11,740.06 and $12,977.18 for 1978 and 1979 respectively.

Appeals to the Virgin Islands Board of Tax Review (the "Board") were appropriately taken. The Board upheld the 1978 property assessment and reduced the 1979 property assessment to $980,927, for a property tax bill of $12,261.59.

Naturally disappointed with the result, Equity then filed the case herein for a writ of review pursuant to 33 V.I.C. § 2453(c).

### I. *Scope of Review*

Since § 2453(c) does not provide for anything more than an appeal to the District Court for a writ of review, we must look to other sections of the Virgin Islands Code for the procedural format the Court must follow. Section 1423 of Title 5 of the Virgin Islands Code, which sets forth the powers of the court on review, provides that:

> Upon the review provided for in this chapter the court shall have power to affirm, modify, reverse or annul the decision or determination reviewed, and if necessary, to award restitution to the plaintiff, or, by mandate, direct the officer, board, commission, authority or tribunal to proceed in the matter reviewed according to its decision.

---

[1] Real property is assessed in the Virgin Islands at 60% of actual value. See Act No. 4326, Session Laws of 1979 at 102, effective June 5, 1979.

■ Chapter 97 of Title 5 of the Virgin Islands Code, entitled Writ of Review, is broadly drafted and is remedial in nature. It is a device enabling parties aggrieved by an administrative or ministerial decision to seek judicial review of that determination. As such, it should be construed expansively and the requested relief liberally granted for otherwise the purpose underlying this statutory grant of authority would be frustrated. Simmon v. Christian, 12 V.I. 307, 309 (D.V.I. 1975).

Viewing this case from that perspective, the Court on May 11, 1982, conducted a trial de novo, and received evidence from both parties through testimony and exhibits. We base the following factual findings and conclusions of law upon that testimony and those exhibits.

## II. *Findings of Fact*

The tax assessor actually issued five separate Notice of Change of Assessment and Real Property Bills covering the following properties in St. Croix: Subdivision 6, Est. Strawberry Hill, Remainder of No. 29, Est. Strawberry Hill, No. 39 Est. Barren Spot, No. 40 Est. Barren Spot and No. 41 Est. Barren Spot. The per acre valuation of each of the five separate parcels of land varied. The Court will not follow that formulation, however, but will base its findings on an average per acre valuation, and leave it to the assessor to make an apportionment.

Pursuant to the assessor's valuation, the 189 acres of land were worth, at actual value and not the statutory 60% of value, $1,565,340 in 1978 and $1,730,291 in 1979. This contrasts with the $322,000 actually paid by Equity in 1979 for the same property.

Put another way, Equity paid $1,704 per acre for property the assessor valued at $8,282 per acre in 1978 and $9,155 per acre in 1979.

### A. *Assessment: Factors Considered*

■ In computing the actual value of real property subject to taxation, nine separate "elements and incidents" are to be considered. 33 V.I.C. § 2404. Those which apply to large scale land valuations are: location and surroundings, recent cost to the present owner, recent sale price of adjacent property, accessibility and proximity to public facilities, conveniences and utilities.

The testimony and exhibits at the trial consisted of the traditional presentation by an expert witness on behalf of Equity concerning the value of other comparable parcels of land, and the testimony of

182

the government as to its own comparable values of other properties. There was, however, an important distinction between the Equity expert and the government: while the former used larger-sized parcels as comparables, the government generally utilized lot sizes of a quarter of an acre. This explains in part the disparity in valuations which forms the nub of the controversy before the Court.

The Court finds at the outset that for the purposes of comparison, the use of larger-sized parcels of land in this instance is more in keeping with the requirements of 33 V.I.C. § 2404 than the use of quarter-acre sized lots. This is because the property at issue in this action is a larger-sized parcel of land.

The expert who testified for Equity presented 12 comparable land sales (though not all of recent vintage) ranging in size from little more than five acres to 581 acres, and in sales price from $1,250 per acre to $4,800 per acre. More particularly, six of these transactions involved land zoned R-2, which is the designation of the subject property.

In his testimony, the Equity expert made several points which apply in this case:

(1) R-2 land is desirable because it commands a better price in bulk by reason of the lot size permitted for subdivision purposes (0.23 U.S. acre).

(2) Land closer to Centerline Road, or fronting thereon, is more valuable for development purposes, and land on Centerline Road closer to Christiansted is more valuable than if it were closer to Frederiksted.

For these reasons, he conceded, the property in question is more valuable on a per acre basis than some of the comparable sales he cited which are closer to Frederiksted. In some instances, he testified, the difference could make the property in question as much as $1,000 per acre more valuable.

## B. *The Property in Question*

The property in question is located on Centerline Road, running one and one half miles along that Road between Sunny Isle Shopping Center and Ville La Reine Shopping Center. It is near schools, a hospital, banks, the post office and the new road which is expected to be constructed linking Centerline Road to the containerport, soon to open on the south shore of St. Croix.

In those respects, its location and surroundings, its accessibility and its proximity to public facilities, conveniences and utilities is far more desirable than many of the comparable sales cited by the

Equity expert witness. It would, therefore, be more valuable than, for example, the comparable sale cited by the Equity expert as Tract A of Est. Enfield Green (126 acres of R-2 land) near the West End of St. Croix. That comparable sale was on the basis of $2,778 per acre.

Applying the criteria set forth in 33 V.I.C. § 2404, the Court finds that, in the words of Norman Cissel, who served on the Board of Tax Review from 1977 to 1982, that Equity "made an excellent buy". Mr. Cissel's testimony on behalf of the government also conceded, however, the desirability of matching larger-sized parcels against the property in question to obtain comparable sales. Thus, he partially contradicted the government position that land as small as 0.23 U.S. Acre could be considered comparable.

While Equity made an "excellent buy", however, the Court does not find that it was as "excellent" as the government determined by its assessment. Rather, as is so often the case, the actual value comes to rest somewhere between the positions of the contending parties.

The Court, as the finder of fact, has carefully considered all of the criteria imposed by 33 V.I.C. § 2404. It has also considered certain of the comparable sales cited by Equity, and matched the criteria against those comparable sales and the property in question.

In so doing, the Court finds that the 189 acres of land in question had an average full value in 1978 and 1979 of $4,400 per acre, or a total full value of $831,600. If the property is assessed at 60% of actual value as statutorily required, the assessed value should be $498,960. The tax, at the statutory rate of $12.50, should be $6,237 for each year.

As stated earlier, the government assessed each of the five parcels at a different per acre valuation. In the judgment accompanying this decision, the government will have the option of apportioning the valuation found herein over the five parcels according to its own formula, or simply adopting the per acre valuation and applying it to the entire 189 acres. If Equity should object to the apportionment, it may request the Court to conduct a further hearing on the matter. Preferably, the parties will confer and agree on one of the two apportionments set forth above as an alternative to further involvement of the Court.

### III. *Conclusions of Law*

(1) The Court has jurisdiction of the parties and the subject matter.

(2) Equity is entitled to issuance of a writ of review, and entry of judgment after such review as provided herein.

(3) The 189 acres which form the property in question in this case had a full valuation in 1978 and 1979 of $831,600. The assessment should have been a total of $498,960 for each year, and the property tax should have been $6,237.00 for each year.

(4) The government will have the option to accept the $4,400 per acre full value and apportion such value across the five parcels in question, or to apportion the total according to its own formula, and after consultation with Equity, over the same five parcels.

(5) If Equity objects to the apportionment by the government, application may be made within ten (10) days of such apportionment to the Court for a further hearing on the matter.

## JUDGMENT

THIS MATTER came before the Court for trial on May 11, 1982, pursuant to petitioner's application for a writ of review. All parties were present and represented by counsel. The Court received testimony and exhibits into evidence. The Court having filed its Memorandum Opinion of even date herewith, and the premises considered, now therefore it is

ORDERED, ADJUDGED AND DECREED:

1. THAT the petition for a writ of review be and the same is hereby GRANTED.

2. THAT the total full value of Subdivision 6, Est. Strawberry Hill, Remainder of No. 29, Est. Strawberry Hill, and Nos. 39, 49 and 41 of Est. Barren Spot, during the years 1978 and 1979 was $831,600.

3. THAT the respondent shall have the option of dividing the assessment arrived at by application of law equally among the five parcels in question, or by apportionment according to its own formula, after consultation with petitioner.

4. THAT in the event the respondent shall apportion the assessed value according to its own formula among the five parcels of land in question, the petitioner, if dissatisfied, shall have the right to apply for a further hearing limited to the question of the method of apportionment, and the Court will schedule such a hearing, if the application therefor is made within ten (10) days of the date of issuance of the revised Notice of Change of Assessment and Real Property Bill for each parcel which conforms to the findings herein. In the event no such application is made, this judgment of the Court herein shall be final.