BERNE CORP. and B & B Corp., Plaintiffs,

v.

GOVERNMENT OF THE VIRGIN ISLANDS and Roy Martin, Tax Assessor, Defendants.

Civ. No. 2000–141.

District Court, Virgin Islands, St. Thomas Division.

Sept. 21, 2000.

---

James M. Derr, St. Thomas, U.S.V.I., for plaintiffs.

Richard M. Prendergast, Wayne G. Anderson, Assistant Attorneys General, St. Thomas, U.S.V.I., for defendants.

## MEMORANDUM

MOORE, District Judge.

Berne Corporation ["Berne"] and B & B Corporation ["B & B"] [collectively "plaintiffs"] allege that the Government of the Virgin Islands, through its tax assessor, Roy Martin ["Martin" or "tax assessor"], has illegally assessed the value of their commercial properties based on replacement value, rather than the statutorily-required "actual value." Plaintiffs' have filed an application for preliminary injunction seeking to enjoin the tax assessor, under 42 U.S.C. § 1983 ["1983"], and the government and the tax assessor, under 5 V.I.C. § 80, from assessing and collecting property taxes for real property in the Virgin Islands until such taxes and assessments are redetermined based on the "ac-

tual value" of each property in accordance with 48 U.S.C. § 1401a and 33 V.I.C. § 2404. Defendants opposed the application and moved to dismiss the case. The Court heard evidence and argument on August 15, 2000 ["August 15th hearing"] and denied the motion to dismiss. It will now grant the application for preliminary injunction.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Berne and B & B Corporation are corporations organized and existing under the laws of the United States Virgin Islands with their principal places of business in St. Thomas, where each owns commercial real estate. Berne is the owner of Parcel Nos. 69, 70BA, and 70A & 71A Kronprindsens Gade, and B & B is the owner of 69A Kronprindsens Gade [collectively the "properties"].

For the year 1999, the Government of the Virgin Islands, through Martin, assessed the value of Berne's parcels at $4,185,690 [1] and B & B's at $1,710,230, for a total assessment of $5,895,920, even though the properties sustained considerable damage in Hurricane Marilyn in 1995, and have not been repaired. This assessment is an increase from the pre-Marilyn 1994 assessment of approximately $4.1 million. The complaint alleges and the evidence tends to show that Martin based these values on the replacement cost of the properties, calculated by multiplying the square footage of the existing structures by $110 per square foot, and ignoring damage done by Marilyn, such as the destruction of an entire floor, and structural damage to the lower floor on one property. An appraisal attached to the complaint as Exhibit B and dated June 4, 1998, valued the properties at approximately $1.3 million.

In support of their contention that Martin violated federal law by not basing the

---

1. The individual parcels owned by Berne were valued accordingly: Parcel No. 69 ($3,775,580), Parcel 70BA, ($51,867), and Parcel No. 70A & 71A ($358,243).

tax on the actual value of the properties, plaintiffs introduced the testimony of Steven Jamron, a certified general appraiser and real estate broker, who appraised the properties at $745,000 in a report dated August 14, 2000. Mr. Jamron testified that he employed three approaches in his appraisal: a sales comparison approach, which utilizes recent sales of comparable property; a cost approach, which is based on the replacement cost new of the property, minus all forms of depreciation; and a net income approach, which values the property based on its income-production utility. He also testified that the value of the properties never approached 5.5 million dollars for the year 1999 under any generally accepted standard or practice in the appraisal profession.

In support of their contention that they have no adequate redress through local administrative and judicial proceedings, the plaintiffs introduced evidence that they filed a timely appeal of their 1994 assessment in 1995 to the Board of Tax Review ["Board"], which the Board did not hear until January 15, 1999 ["1999 hearing"]. When a revised 1994 tax bill was issued in September of 1999,[2] plaintiffs immediately applied to the Territorial Court for a writ of review of that new bill, which remained unresolved as of the August 15th hearing.

2. In September, 1999, plaintiffs received a revised 1994 tax assessment valuing the property at $3,650,000, which amounted to a twelve percent downward adjustment from the original $4,147,845 valuation.

3. Since the subject of this lawsuit is a federal statute and not a local, territorial tax, it is not barred by the State Tax Injunction Act, 28 U.S.C. § 1341 ("The district courts shall not enjoin, suspend, or restrain the assessment, levy, or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State"). *Compare 35 Acres Assocs. v. Adams,* 36 V.I. 270, 274–75, 962 F.Supp. 687, 690 (1997) (holding that stamp tax imposed on privilege of recording deed on the territory's land records is local, non-federal tax covered by State Tax Injunction Act).

4. The Congress has plenary authority under the Constitution to govern the United States

## II. THE PLAINTIFFS' CAUSES OF ACTION

The crux of plaintiffs' complaint is that, by not assessing properties on their "actual value," the defendants are violating a federal statute which prescribes the method of determining the value of real property upon which the Virgin Islands assesses its local property taxes.[3] The federal statute underlying this case, 48 U.S.C. §§ 1401–1401e, was enacted by Congress in 1936 to harmonize property taxes in the Territory of the Virgin Islands across different types and uses of land and to reduce the burden of taxation on land in productive use.[4] *See* 48 U.S.C. § 1401 ("It is the policy of Congress to equalize and more equitably to distribute existing taxes . . . and reduce the burden of taxation now imposed on land in productive use. . . .").

Section 1401a requires that "all taxes on real property in the Virgin Islands *shall be* computed on the basis of the actual value of such property. . . ."[5] *Id.* (emphasis added). Section 1401b gave the two Virgin Islands municipal legislative authorities three months to enact laws enforcing the provisions of 1401a, failing which the President would prescribe interim regulations.[6] When St. Thomas/St. John did not follow

Virgin Islands. *See* U.S. CONST. art. IV, § 3, cl. 2 ("The Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States. . . .").

5. The full text of 48 U.S.C. § 1401a reads:

For the calendar year 1936 and for all succeeding years all taxes on real property in the Virgin Islands shall be computed on the basis of the actual value of such property and the rate in each municipality of such islands shall be the same for all real property subject to taxation in such municipality whether or not such property is in cultivation and regardless of the use to which such property is put.

6. The full text of 48 U.S.C. § 1401b reads:

Until local tax laws conforming to the requirements of sections 1401 to 1401e of

the Municipality of St. Croix in enacting the required provisions,[7] President Roosevelt prescribed regulations for the levy, assessment, collection, and enforcement of real property taxes for the Municipality of St. Thomas and St. John. These remained in force until 1955, when the First Legislature organized under the Revised Organic Act of 1954 [8] made the presidentially prescribed regulations applicable throughout the Virgin Islands.

■ Among the provisions adopted by the First Legislature was 33 V.I.C. § 2404, which, as amended, prescribes all of the factors that the assessor must evaluate in computing the "actual value" of real prop-

erty subject to taxation.[9] This local enactment did not supersede the federal law or remove the local property tax from federal control. The federal requirement under section 1401a that the tax assessor use "actual value" in assessing the tax remains in force and is unaffected by its territorial implementation. The Virgin Islands Legislature merely complied with what the United States Congress required.

■ The easiest way to understand that 48 U.S.C. § 1401a continues to control the valuation of real property for application of territorial taxes is to examine whether the Virgin Islands Legislature could amend 33 V.I.C. § 2404 to eliminate the requirement

---

this title are in effect in a municipality the tax on real property in such municipality for any calendar year shall be at the rate of 1.25 per centum of the assessed value. If the legislative authority of a municipality failed to enact laws for the levy, assessment, collection, or enforcement of any tax imposed under authority of said sections, within three months after May 26, 1936, the President shall prescribe regulations for the levy, assessment, collection, and enforcement of such tax, which shall be in effect until the legislative authority of such municipality shall make regulations for such purposes.

7. Pursuant to its Article IV authority to govern the Territory of the Virgin Islands, Congress on June 22, 1936, enacted the Organic Act of 1936, which continued the Municipality of St. Croix and the Municipality of St. Thomas and St. John as separate bodies politic. *See* Act of June 22, 1936, ch. 699, §§ 2, 40, 49 Stat. 1807, *reprinted in* V.I.CODE ANN., Historical Documents, 45–83 (1967) ["1936 Organic Act"]. On September 5, 1936, the Council of the Municipality of St. Croix enacted a property tax law in conformity with section 1401a. See *Ricardo v. Ambrose*, 3 V.I. 482, 489, 211 F.2d 212, 215–17 (3d Cir.1954) (giving a brief history of property taxes in the Virgin Islands).

8. Acting again under its Article IV authority, the Congress enacted the Revised Organic Act of 1954, 48 U.S.C. §§ 1541–1645 (1995 and Supp.2000), *reprinted in* V.I.CODE ANN., Historical Documents, 73–177 (codified as amended) (1995 and Supp.2000) ["Revised Organic Act"]. In section 5(a), Congress supplanted the two municipal councils with a single, uni-

cameral "Legislature of the Virgin Islands." *See* REV.ORG ACT § 5(a), 48 U.S.C. § 1571(a).

9. Title 33, Section 2404 of the Virgin Islands Code presently reads:
(a) In computing the *actual value* of real property subject to taxation, the assessor *shall take in consideration* all of the following elements and incidents—
(1) location and surroundings;
(2) quality or fertility;
(3) condition of structures;
(4) recent cost to the present owner;
(5) recent sale price of adjacent property;
(6) recent bona fide offer;
(7) accessibility;
(8) proximity to public facilities, conveniences and utilities; and
(9) rental or income derived directly from the property.
(b) If the property being assessed is commercial property, the assessor may utilize a capitalization of income method of assessment in conjunction with utilization of the factors listed in subsection (a) of this section so long as the utilization of such method results in a greater assessment than if it is not utilized. For purposes of this section, the "capitalization of income method" is a method of assessing commercial property by the conversion of rent to the real property value by the utilization of a capitalization rate applicable to the type of property involved. Determination of the capitalization rate shall be made by the Tax Assessor of the Virgin Islands after careful consideration of the comparable rate used by lending institutions.
(c) The tax assessor may promulgate any rules necessary for the implementation of this chapter.
(Emphasis added.)

that real property taxes "shall be computed on the basis of the actual value of such property." The Virgin Islands derives its legislative authority solely from the Congress, which has extended that power only to those "rightful subjects of legislation not inconsistent with ... the laws of the United States made applicable to the Virgin Islands." [10] Clearly the territorial lawmakers could not eliminate or vary the "actual value" requirement Congress has imposed.

### A. Section 1983, Title 42 of the United States Code, Permits Suit for Prospective Relief Against the Tax Assessor in His Official Capacity.

Plaintiffs' cause of action under 42 U.S.C. § 1983 is against Martin in his official capacity to enjoin him from depriving plaintiffs of a right secured by the laws of the United States, to wit, the right to have their real property taxed at its actual value under 48 U.S.C. § 1401a. Because plaintiffs seek only prospective relief from Martin, and the federal statute at issue creates a specific, binding obligation on the tax assessor that inures to plaintiffs' benefit, Berne and B & B have a valid section 1983 cause of action.

#### 1. *Liability of Local Officials Under Section 1983*

Section 1 of the Civil Rights Act of 1871, 42 U.S.C. § 1983, renders certain "persons" liable for deprivations of constitutional or federal statutory rights.[11] A

state or territorial official acting in his official capacity is a "person" under section 1983 when only injunctive relief is sought. *See Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71 n. 10, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) ("Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.' ") (quoting *Kentucky v. Graham,* 473 U.S. 159, 167, n. 14, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)); *Ngiraingas v. Sanchez,* 495 U.S. 182, 110 S.Ct. 1737, 109 L.Ed.2d 163 (1990) (territorial officials are state officials under section 1983).[12]

Plaintiffs seek to restrain Martin only from collecting illegal property taxes assessed or imposed in violation of the federal statute. For purposes of this prospective injunctive relief, Martin is considered a "person" under section 1983 and he acts under color of law when he assesses and collects property taxes. *See Kentucky v. Graham,* 473 U.S. at 166, 105 S.Ct. 3099 ("it is enough to show that the official, acting under color of law, cause[s] the deprivation of a federal right."). Plaintiffs, therefore, may maintain this 1983 injunctive action against Martin in his official capacity as tax assessor.

#### 2. *Section 1401a Creates a Federally Protected Right Actionable Under Section 1983.*

The Court next must determine whether there has been a "deprivation of any

---

**10.** Section 8(a) of the Revised Organic Act, 48 U.S.C. § 1574(a) provides for the legislative power of the Territory: "The legislative authority and power of the Virgin Islands shall extend to all rightful subjects of legislation not inconsistent with this Act or the laws of the United States made applicable to the Virgin Islands...."

**11.** Section 1983 states in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any ... Territory ..., subjects, or causes to be subjected, any citizen of the United States or other person within the

jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the ... laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

**12.** This Court, sitting in its appellate capacity, has observed that section 1983 does not permit suits against territorial officials acting in their official capacities when money damages are sought. *See Nibbs v. Roberts,* 31 V.I. 196, 206, 1995 WL 78295, *4–*5 (App.Div.1995) (citing *Ngiraingas v. Sanchez,* 495 U.S. 182, 110 S.Ct. 1737, 109 L.Ed.2d 163 (1990)).

rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983; *see also Nibbs,* 31 V.I. at 213–14, 1995 WL 78295, at *8. Plaintiffs complain that the tax assessor has violated and routinely violates the requirements of 48 U.S.C. § 1401a that property be assessed at its federally mandated actual value.

■ While the mere existence of a federal law does not by itself support a cause of action to prevent or remedy its violation, the Supreme Court has recognized that "the § 1983 remedy broadly encompasses violations of federal statutory as well as constitutional law." *Maine v. Thiboutot,* 448 U.S. 1, 4, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980).[13] The Supreme Court has narrowed the effect of *Thiboutot* by excluding statutes that contain "comprehensive enforcement mechanisms" that demonstrate "congressional intent to preclude the remedy of suits under § 1983." *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n,* 453 U.S. 1, 20, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981); *see also Wright v. City of Roanoke Redev. and Hous. Auth.,* 479 U.S. 418, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987) (administrative enforcement mechanism without judicial remedies is not sufficiently comprehensive). The Court stated further that the statute in question must not merely declare policy; it must create enforceable rights. *See Pennhurst State School and Hosp. v. Halderman,* 451 U.S. 1, 19, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981) (Section 1983 "rights, privileges, or immunities" exclude federal provisions that do "no more than express a congressional preference for certain kinds of treatment").

■ The Supreme Court summarized and supplemented these exceptions by articulating a three-part test to determine whether a statute creates enforceable rights. *See Golden State Transit Corp. v. City of Los Angeles,* 493 U.S. 103, 110 S.Ct. 444, 107 L.Ed.2d 420 (1989). First, the Court cited *Pennhurst* as requiring that the federal statute in question create an obligation binding on a government unit. Second, relying on *Wright,* the Court held that the plaintiff's interests must be sufficiently specific to be judicially enforceable. Third, the Court required that the federal provision in question be intended to benefit the plaintiff. Once the plaintiff has shown that the statutory provision at issue meets these three requirements, the defendant still may defeat the action by showing that Congress foreclosed a remedy under section 1983 by enacting an alternative comprehensive enforcement mechanism. *See id* at 106, 110 S.Ct. 444.

■ The federal provision at issue here, 48 U.S.C. § 1401a, employs the word "shall," and is mandatory. *See Rental Equip. Co., Inc. v. Meridian Eng'g Co., Inc.,* 10 V.I 421, 429–30, 374 F.Supp. 892, 898 (1974) (word "shall" normally implies mandatory action). Section 1401a creates a binding obligation on the Virgin Islands to assess property taxes using the "actual value" of the real property. The first *Golden State* requirement is therefore satisfied.

Further, section 1401a creates an interest, the use of "actual value" for computation of property taxes, which is sufficiently specific to be judicially enforceable. In a case after *Golden State,* the Supreme Court held that an amendment requiring that reimbursement by states to healthcare providers under the Medicaid Act be "reasonable and adequate" created a binding obligation that was specific enough for judicial enforcement. *See Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990). "Actual value" is equated with "fair market value" or the "amount at which property would change hands between a willing buyer and

**13.** *See also Monell v. Dept. of Soc. Serv. of City of N.Y.,* 436 U.S. 658, 700–01, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) ("there can be no doubt that [section 1983] was intended to provide a remedy, to be broadly construed, against all forms of official violation of federally protected rights.").

a willing seller." *See* Black's Law Dictionary at 35, 597 (6th ed.1991). The term "actual value," being even more specific than the words "reasonable" and "adequate," is surely sufficiently specific to warrant judicial enforcement, and meets the second *Golden State* prong.

Finally, section 1401a clearly was intended to benefit taxpayers by creating uniformity of taxation and reducing the burdens of taxation on land (and thus landowners such as plaintiffs) in productive use. *See* 48 U.S.C. § 1401 ("It is the policy of Congress to equalize and more equitably to distribute existing taxes on real property in the Virgin Islands of the United States and to reduce the burden of taxation now imposed on land in productive use in such islands."). The three requirements of *Golden State* having been satisfied, and the defendant having failed to allege or show a comprehensive enforcement scheme indicative of Congress' intent to preclude suit under section 1983 (and there being none), the Court concludes that 48 U.S.C. § 1401a creates a federally protected right actionable pursuant to 42 U.S.C. § 1983.

**B. Section 80 of Title 5, Virgin Islands Code, Authorizes Suit on Behalf of Property Taxpayers.**

▆▆▆▆ The Court has supplemental jurisdiction over plaintiffs' claim under 5 V.I.C. § 80, which states that "[a] taxpayer may maintain an action to restrain illegal or unauthorized acts by a territorial officer or employee, or the wrongful disbursement of territorial funds." [14] The Editor's note to this section states that it

> is designed to clarify the right of a taxpayer to bring an action to restrain unlawful action by a territorial officer or employee. Similar provisions appear in the laws of a majority of the states. The section is believed to be declaratory of existing law.

Nothing limits the application of this statute to disbursements of funds, as the defendants have argued. The plain language of section 80 applies to intentional acts of assessing and collecting taxes that are illegal or unauthorized. There is no dispute that plaintiffs have standing as taxpayers to maintain an action to restrain the allegedly unauthorized actions of the tax assessor. *See Holmes v. Government of Virgin Islands*, 10 V.I. 365, 369, 370 F.Supp. 715, 717 (1974) (taxpayers in Virgin Islands may maintain suit in district court against illegal government action).[15]

As appropriate, a plaintiff may bring suit under section 80 on behalf of all similarly situated taxpayers. *See Smith v. Government of Virgin Islands*, 4 V.I. 489, 493, 329 F.2d 131, 133 (3d Cir.1964) ("If there has been a violation or evasion of the law . . . , damage is presumed to result to all taxpayers. The object of the suit is to prevent the violations of the law.") (quoting *Lucas v. American–Hawaiian Engineering & Const. Co.*, 16 Haw. 80, 86–87 (1904)). The government has offered no

---

**14.** The Court exercises supplemental jurisdiction over issues of Virgin Islands law pursuant to 28 U.S.C. § 1367(a) (district courts having original jurisdiction "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . .").

**15.** Plaintiffs' lawsuit also is not barred by the State Tax Injunction Act, 28 U.S.C. § 1341, because the Virgin Islands does not provide a "plain, speedy and efficient remedy" to resolve the disputed assessment. Even though 33 V.I.C. § 2452 requires the Board of Tax Review to hear an appeal within sixty days of its filing, it took four years for the plaintiffs to obtain an inadequate hearing on their 1994 appeal, and another year has passed with no indication that the matter will soon be decided by the Territorial Court. Plaintiffs were prevented from cross-examining the tax assessor about the method he used to calculate the assessment. The acting chairman did not "want to get into an attorney thing" and did not "want to get into that litigation thing." (*See* Tr.Bd. of Tax Review Hr'g at 57–58, Jan. 15, 1999; Pls.' Ex. 2.) This amounted to a denial of procedural due process. The inadequacy of plaintiffs' territorial remedy is confirmed by the additional year plaintiffs' petition for writ of review has been pending in the Territorial Court.

good reason why the same principles do not apply to restrain an evasion of the statutes requiring property taxes to be based on actual value. The violation of law alleged by plaintiffs is presumed to harm all payers of the property taxes whose properties have also been illegally valued.

### III. PLAINTIFFS' APPLICATION FOR PRELIMINARY INJUNCTION

 Berne and B & B seek a preliminary injunction to restrain the government and its tax assessor from improperly assessing and collecting property taxes in violation of 48 U.S.C. § 1401a and 33 V.I.C. § 2404, and the very language of 5 V.I.C. § 80 authorizes injunctive relief. Ordinarily, four factors govern this Court's exercise of its discretion to issue a preliminary injunction: whether movant can establish (1) a reasonable probability of success on the merits, (2) irreparable harm if the relief is denied, and (3) no greater harm to the nonmoving party plus (4) service to the public interest if the relief is granted. *See Joseph v. Henry,* 36 V.I. 115, 121–22, 958 F.Supp. 238, 243 (App.Div. 1997). Because the plaintiffs are not required to show irreparable harm under 5 V.I.C. § 80, and the other three preliminary injunction factors favor the plaintiffs, the Court will grant the motion.

#### 1. *Plaintiffs Are Likely to Succeed on the Merits.*

 As previously noted, federal law requires the tax assessor to use "actual value" as the basis for computing property tax in the Virgin Islands. *See* 48 V.I.C. § 1401a. All nine factors contained in 33 V.I.C. § 2404(a) "are to be considered" in computing the actual value of property subject to taxation. *See Equity Inv. Corp. v. Government of the Virgin Islands,* 19 V.I. 180, 182 (D.V.I.1982). "Capitalization of income" may be used in conjunction with these nine factors to assess commercial property. *See* 33 V.I.C. § 2404(b).

Mr. Martin admitted that his office used the replacement cost of the buildings in arriving at his assessed value of the properties. (*See* Tr.Bd. of Tax Review Hr'g at 51, Jan. 15, 1999; Pls.' Ex. 2.) Replacement cost is not equivalent to "actual value," nor is it one of the ten factors listed in section 2404. It is merely the number of square feet multiplied by a replacement cost per square foot. Further, plaintiffs' evidence that the tax assessor's valuation was several times the properties' appraised value under generally accepted methods would likely persuade a trier of fact that the tax assessor did not use "actual value" in assessing plaintiffs' properties. Plaintiffs have shown that they are likely to succeed on the merits.

#### 2. *No Irreparable Harm Need Be Shown.*

The plaintiffs need not show irreparable harm because the very remedy provided by 5 V.I.C. § 80 is equitable in nature. Section 80 itself authorizes injunctive relief to restrain or enjoin violations of law. The Court of Appeals for the Third Circuit has rejected the rule that plaintiffs must show special pecuniary damages to themselves different in character from the damages suffered by all taxpayers, since

> the Virgin Islands statute imposes no such requirement. Moreover [that] rule ... seems to us inconsistent with the basic concept of a taxpayer's suit to the extent that it requires a plaintiff to show special personal damage other than the prospect which he shares with other taxpayers....

*Smith* at 494, 329 F.2d at 133. If no special personal or pecuniary damages are a precondition of injunctive relief, then a showing of non-monetary irreparable harm surely is not needed.[16]

#### 3. *Balance of Harm and Public Interest Favor Plaintiffs.*

The balance of harm and the public interest both favor enjoining the government

---

**16.** Defendants rely on an opinion of this

Court for the proposition that the Court will

from assessing property taxes in violation of federal and local law, as the government appears to concede by not briefing or arguing either of these two factors. Moreover, any harm to the defendants is minimized by the expedited trial of this matter. Indeed, these two factors inherently favor the plaintiffs in a taxpayer suit, since its purpose is "to obtain the aid of the district court to restrain any illegal acts of territorial authorities," *see id.* at 492, 329 F.2d at 131, and it "merely requires a showing that [plaintiffs] are territorial taxpayers," *see id.* at 494, 329 F.2d at 133. Further, it is undeniable that the public interest weighs in favor of enjoining the government from violating federal law. *See St. Thomas–St.John Hotel & Tourism Ass'n, Inc. v. Government of U.S. Virgin Islands,* 1999 WL 376873, *11, 1999 U.S. Dist. LEXIS 8652 (D.Vi.1999), *rev'd on other grounds,* 218 F.3d 232 (3d Cir.2000) (public has interest in executive branch not violating federal law). To minimize any harm to the government, the Court will set a prompt trial on the merits.

### IV. CONCLUSION

The Court denied the defendants' motion to dismiss at the close of the August 15th hearing. It will now grant plaintiffs' motion for a preliminary injunction. The defendants are enjoined from collecting property taxes unless the property or properties were assessed in accordance with 48 U.S.C. § 1401a and 33 V.I.C. § 2404. A trial on the merits is set for the week of December 4, 2000.

### ORDER

For the reasons set forth in the accompanying memorandum of even date, it is hereby

not enjoin tax collections unless there is irreparable injury. *See Ricardo v. Ambrose,* 2 V.I. 266, 110 F.Supp. 716 (1953), *aff'd,* 3 V.I. 482, 211 F.2d 212 (3d Cir.1954). The Court stated that "the collection of a tax will not be enjoined on account of defects, mistakes, irregularities or omissions of statutory requirements

**ORDERED** that defendants' motion to dismiss is **DENIED WITH PREJUDICE;** it is further

**ORDERED** that plaintiffs' application for preliminary injunction is **GRANTED;** the Government of the Virgin Islands and Roy Martin, tax assessor, are enjoined from collecting property taxes against the real property owned by Berne Corporation and B & B Corporation until the tax assessor can establish at a trial on the merits that the property taxes on those properties have been assessed on their actual value in accordance with 48 U.S.C. § 1401a and 33 V.I.C. § 2404; it is further

**ORDERED** that a ruling on whether this action shall be expanded to include all the taxpayers similarly situated under 5 V.I.C. § 80 shall await further proceedings; and, it is further

**ORDERED** that a trial on the merits is scheduled for December 4, 2000 at the District Court on St. Thomas.

... which are not of such a nature as to affect the substantial justice of the tax itself or work irreparable injury...." *Id.* at 279, 110 F.Supp. at 722. Since plaintiffs' case challenges the substantial justice of a property tax based on an unauthorized assessment, *Ambrose* is entirely inapposite.