**LINDON CORPORATION and Gordon L. Coffelt, Plaintiffs,**

v.

**GOVERNMENT OF THE VIRGIN IS-LANDS, and Roy Martin, in his official capacity as Tax Assessor, Defendants.**

No. CIV.2002–57.

District Court, Virgin Islands, D. St. Thomas and St. John.

Aug. 22, 2003.

Soraya Diase Coffelt, St. Thomas, VI, for the plaintiffs.

Kerry E. Drue, St. Thomas, VI, for the defendants.

## MEMORANDUM

MOORE, District Judge.

On May 12, 2003, I found the Territory's property tax system unlawful because it "systemically employ[ed] a method of assessment not calculated to determine the actual value of properties as required by 48 U.S.C. § 1401a." *Berne Corp. v. Government of the Virgin Islands*, 262 F.Supp.2d 540, 561 (D.Vi.2003) [*Berne Corp. II* ]. Accordingly, I entered a decree in the consolidated portion of this case awarding injunctive and other such relief common to all parties. All that remains for resolution in this case is application of this decree to the unique facts posed in this individual action brought by plaintiffs Lindon Corporation and Gordon L. Coffelt [collectively "plaintiffs"], including its request for declaratory relief regarding the actual value of the parcels of real property they own.

## I. FINDINGS OF FACT AND CONCLUSIONS OF LAW

Lindon Corporation ["Lindon"] is a Virgin Islands corporation that owns commercial real property on St. Thomas known as Parcel No. 210–3A Estate Altona & Welgunst ["Frostco Building"]. Lindon purchased the property in 1980 as vacant land, and thereafter constructed various structures on it, including a gas station, an office/retail complex and a two-story metal frame building. Lindon completed construction on all three buildings in 1988 at a cost of $1,300,000.00. (Plt.'s Ex. 1; Coffelt Test., Jan. 28, 2003, at 6–8.) Gordon L. Coffelt, president of Lindon, is a Virgin Islands resident and owns agricultural property on St. Thomas known as Parcels Nos. 19H and 19–1–3 Estate Smith Bay.

Upon its belief that the Government was vastly overstating the value of their properties for property tax purposes, the plaintiffs filed timely appeals of their assessments with the Board of Tax Review. Despite the fact that some of these appeals have been pending since 1994, the Board of Tax Review failed to conduct hearings or provide any relief to either plaintiff until June 11, 1999, when it finally held a hearing on the appeals of the 1994–1996 tax bills for the Frostco Building. On September 24, 1999, the Board of Tax Review voted to reduce the value of this property to $3,500,000. (Plts.' Ex. 5 at 10–12.) The plaintiffs, however, apparently had no notice of this hearing nor have they ever received a written decision from the Board of Tax Review or any refund for overpayments. (Coffelt Test., Jan. 28, 2003 at 21–24.) Having received no relief from the Board of Tax Review, plaintiffs sued the defendants in this Court alleging that the Government had illegally assessed the value of their properties based on replacement value, rather than the actual value required by federal law.

At the trial of this individual case, Coffelt presented testimony and evidence that the Tax Assessor's assessments of plaintiffs' respective properties were plagued by the same problems I noted in the consolidated case. In particular, he testified that the Tax Assessor committed numerous errors with respect to the Frostco

Building and the agricultural properties, including (1) using excessively long depreciation life spans for the purpose of increasing valuation, which in many cases inexplicably increased from 80 years to 90 years between 1996 and 2001, (Coffelt Test., Jan. 28, 2003 at 200–2001), (2) describing the land on which Frostco Building sits as "level" when in actuality, it is steep, (*Id.* at 203), (3) taxing the Frostco Building as having three cisterns when in fact it only had one cistern and two gasoline storage tanks, (*Id.* at 198–199, 207, 214–215; Plts.' Ex. 4 at 84), (4) taxing the Frostco Building's cistern volume capacity at 50,000 gallons when its actual capacity was only 28,000 gallons (Coffelt Test., Jan. 28, 2003 at 18–19), (5) listing greater than actual ceiling heights, (Id. at 204–205, 212), (6) taxing the Frostco Building for a non-existent carport, (Id. at 213–214), (7) failing to acknowledge the existence of a dam on the agricultural properties[1], (Id. at 149–150, 166).

The Government, on the other hand, failed to produce any evidence to support the values assessed by the Tax Assessor's Office. Instead, the Government first argued that Lindon is only entitled to a valuation of its property at $3,500,000.00, the value determined by the Board of Tax Review.[2] As noted earlier, however, Lindon never received notice of the Board of Tax Review's untimely decision nor has this decision ever been implemented. Thus, Lindon has never received any relief. *See Maloney v. Board of Tax Review,* 17 V.I. 326, 328 (D.V.I.1980) (holding that " 'receipt' of notice is not the equivalent of a letter being delivered to the correct address. In order to be 'received', a signed receipt for the notice must be obtained from either the intended recipient personally or from a lawful representative. Delivery to petitioner's mail or postal box does not so qualify."). Moreover, it appears that the Board of Tax Review is still not interested in "that litigation thing"[3] considering no one on the panel showed any interest in reviewing the evidence presented by Lindon in support of its valuations and instead simply wanted to know how many cisterns the property had. (Plts.' Ex. 4; Coffelt Test., Jan. 28, 2003 at 21–25.) Finally, the Government's own consultant, Kenneth Voss, valued the Frostco Building at $3,000,000.00 just before this matter went to trial. (J. Ex. 50) Considering that the property suffered extensive hurricane damage in 1995, (Coffelt Test., Jan. 28, 2003 at 15), it is highly unlikely that the property was worth more between 1995–1997 than it is now. As this Court "may modify, reverse or affirm the decision of the Board of Tax Review," I will exercise my authority to do so and vacate the Board of Tax Review's decision. *See* 33 V.I.C. § 2453(c).

The Government also argues that some of plaintiffs' claims are barred by the statute of limitations. This argument, however, fails as the Government did not

1. After the Tax Assessor's office viewed, at the request of Coffelt, the agricultural properties in October 2002, it confirmed the existence of the dam and acknowledged the use of an improper modification factor. (Martin Test., Jan. 28, 2003 at 161–163, 174.)

2. The Government made a similar argument in regard to the agricultural properties in that the Tax Assessor revised the assessments after acknowledging the existence of the dam on the properties. As the tax bills in question are from 1999 and later, and I am only accepting the plaintiffs' proposed values as good faith estimates of their tax liabilities until such time as the Special Master certifies the Territory's property tax system will produce credible and reliable actual values, I need not address this related argument.

3. *Berne Corporation v. Government of the Virgin Islands,* 120 F.Supp.2d 528, 535 (D.Vi. 2000).

timely raise it. *See Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 392–98, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982) (noting that a statute of limitations defense is subject to waiver and equitable tolling); *Robinson v. Johnson,* 313 F.3d 128, 135–36 (3d Cir.2002) (stating that a statute of limitations defense can be waived and cannot be raised after trial) (citations omitted). The Government's attempt to equate its ability to raise its statute of limitations defense with this Court's April 14, 2003 order granting plaintiffs leave to file a third-amended complaint is unpersuasive. I granted the plaintiffs leave to file a third-amended complaint to conform their complaint to the evidence presented at trial. The plaintiffs did not attempt, as the Government has done, to raise entirely new arguments after the fact. Therefore, I find that the Government has waived its statute of limitations defense.

■ With no evidence to justify the Tax Assessor's assessments, I find plaintiffs' testimony to be credible and the Government's testimony self-serving and incredible. Accordingly, I incorporate my earlier findings from the consolidated portion of this case by reference, find that "the system of assessment as presently established and operated by the Tax Assessor is structurally incapable of equitably and reliably implementing the federal statutory mandate of taxing all real property on its actual value," *see Berne II,* 262 F.Supp.2d at 555, and, in actual application to the plaintiffs' properties, has failed to produce reliable or equitable assessments of their actual or fair market values. Thus, all that remains is to determine a suitable remedy for plaintiffs' respective properties.

## II. REMEDIES

### A. Property of Lindon Corporation

■ The following chart demonstrates the assessed values and tax liability for the Frostco Building as well as Lindon's own appraised values and proposed tax liability for her 1994–2001 tax bills.

| Tax Bill | Assessed Value | Plt.'s Value | Tax Paid | Tax at Plt.'s Value | Overpaid |
|---|---|---|---|---|---|
| 1994 | $3,887,420 | $1,945,000 | $28,927.78 | $14,587.50 | $14,340.28 |
| 1995 | $3,183,557 | $1,990,000 | $26,176.68 | $14,925.00 | $11,251,68 |
| 1996 | $4,497,596 | $1,930,000 | $39,275.82 | $14,475.00 | $24,800.82 |
| 1997 | $4,760,208 | $1,970,000 | $26,176.68 | $14,775.00 | $11,401.68 |
| 1998 | $4,509,543 | $2,115,000 | $33,821.58 | $15,862.00 | $17,959.08 |
| | | | | Total | $79,753.34 |
| 1999 | $5,064,007 | $2,200,000 | $37,980.05 | $16,500.00 | $21,480.05 |
| 2000 | $5,013,314 | $2,190,000 | $37,599.86 | $16,425.00 | $21,174.86 |
| 2001 | $4,962,619 | $2,185,000 | $ 0.00 | $16,387.50 | $ 0.00 |
| | | | | Total | $42,654.91 |

Having reviewed the testimony and evidence presented by plaintiff Lindon, and noting the inability of the Government to produce any evidence to support its values, I find Lindon's values to be credible and the Government's values to be overinflated and not credible. Accordingly, per my August 13, 2003 memorandum in the individual case of Equivest St. Thomas, Inc., I will accept and declare that the values provided by Lindon for the 1994–1998 tax bills are the actual values for those tax

years. Moreover, I find that Lindon has overpaid its property taxes for those years and is entitled to a refund of $79,753.34 plus interest at the statutory rate of 12 percent from the date each tax bill was paid.

Finally, for the 1999 tax bill and beyond, I will accept Lindon's proffered values as good faith estimates of its tax obligations and order the Government to treat these values as the assessed values of the Frostco Building until the Special Master has certified the Territory's assessment system to be capable of assessing properties at their actual value. As Lindon has already paid its 1999 and 2000 tax bills at the Government's assigned values, it is entitled to a credit of $42,654.91 plus interest at the statutory rate of 12 percent from the date each tax bill was paid. The Government may not apply this credit to any future property tax obligation without Lindon's consent. The Government may, however, chose to refund this credit and interest to Lindon.

## B. Properties of Gordon Coffelt

### 1. *19H Estate Smith Bay*

The following chart demonstrates the assessed values and tax liability for 19H Estate Smith Bay as well as Coffelt's own appraised values and proposed tax liability for his 1999–2001 tax bills.

| Tax Bill | Assessed Value | Plt.'s Value | Tax Paid | Tax at Plt.'s Value | Overpaid |
|---|---|---|---|---|---|
| 1999 | $604,473.00 [4] | $125,000.00 | $360.05 [5] | $46.87 | $313.18 |
| 2000 | $604,473.00 | $125,000.00 | $360.05 | $46.87 | $313.18 |
| 2001 | $604,473.00 | $125,000.00 | $360.05 | $46.87 | $313.18 |
| | | | | Total | $939.54 |

Having reviewed the testimony and evidence presented by Coffelt, and noting the inability of the Government to produce any evidence to support its values, I find his values to be credible and the Government's values to be overinflated and not credible. Accordingly, per my August 13, 2003 memorandum in the individual case of Equivest St. Thomas, Inc., I will accept Coffelt's proffered values as good faith estimates of his tax obligations and order the Government to treat these values as the assessed values of 19H Estate Smith Bay until the Special Master has certified the Territory's assessment system to be capable of assessing properties at their actual value.

As Coffelt has already paid his 1999–2001 tax bills at the Government's assigned values, it is entitled to a credit of $939.54 plus interest at the statutory rate of 12 percent from the date each tax bill was paid. The Government may not apply this credit to any future property tax obligation without Coffelt's consent. The Government may, however, chose to refund this credit and interest to him.

### 2. *19–1–3 Estate Smith Bay*

The following chart demonstrates the assessed values and tax liability for 19–1–3 Estate Smith Bay as well as Coffelt's own appraised values and proposed tax liability for his 1999–2001 tax bills.

---

4. The Government had originally assessed this property at $915,869.00 for the 1999–2001 tax bills. (Plts.' Ex. 22.)

5. This property received a farmland exemption of 95 percent of its taxes for its 1999–2001 tax bills. (Coffelt Test., Jan. 28, 2003 at 43–44.)

| Tax Bill | Assessed Value | Plt.'s Value | Tax Paid | Tax at Plt.'s Value | Overpaid |
|---|---|---|---|---|---|
| 1999 | $246,736.00 [6] | $37,000.00 | $3,114.02 | $277.50 | $2,866.52 |
| 2000 | $246,736.00 | $37,000.00 | $3,114.02 | $277.50 | $2,866.52 |
| 2001 | $246,736.00 | $37,000.00 | $ 702.03 [7] | $ 13.87 | $ 688.16 |
| | | | | Total | $6,421.20 |

Having reviewed the testimony and evidence presented by Coffelt, and noting the inability of the Government to produce any evidence to support its values, I find his values to be credible and the Government's values to be overinflated and not credible. Accordingly, per my August 13, 2003 memorandum in the individual case of Equivest St. Thomas, Inc., I will accept Coffelt's proffered values as good faith estimates of his tax obligations and order the Government to treat these values as the assessed values of 19–1–3 Estate Smith Bay until the Special Master has certified the Territory's assessment system to be capable of assessing properties at their actual value. As Coffelt has already paid his 1999–2001 tax bills at the Government's assigned values, he is entitled to a credit of $6,421.20 plus interest at the statutory rate of 12 percent from the date each tax bill was paid. The Government may not apply this credit to any future property tax obligation without Coffelt's consent. The Government may, however, chose to refund this credit and interest to him.

### DECREE

Having considered the entire record in this matter, including the testimony and documentary evidence presented at the trial on January 28, 2003, and based on the Memorandum of even date, it is hereby,

**DECREED** that the Tax Assessor's Office has failed to assess and tax the litigated property of plaintiff at its actual value.

The Court further enters the following remedial orders:

**ORDERED** that Parcel No. 210–3A Estate Altona & Welgunst, the Frostco Building shall have a value of $1,945,000.00 and a tax liability of $14,587.50 for its 1994 tax bill, a value of $1,990,000.00 and a tax liability of $14,925.00 for its 1995 tax bill, a value of $1,930,000.00 and a tax liability of $14,475.00 for its 1996 tax bill, a value of $1,970,000.00 and a tax liability of $14,775.00 for its 1997 tax bill, a value of $2,115,000.00 and a tax liability of $15,862.50 for its 1998 tax bill, a value of $2,200,000.00 and a tax liability of $16,500.00 for its 1999 tax bill, a value of $2,190,000.00 and a tax liability of $16,425.00 for its 2000 tax bill, and a value of $2,185,000 and a tax liability of $16,387.50 for its 2001 tax bill; it is further

**ORDERED** plaintiff Lindon Corporation is entitled to a refund of $14,340.28 for the overpayment of its 1994 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment to be refunded within thirty (30) days of this Order, a refund of $11,251.68 for the overpayment of its 1995 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment to be refunded within thirty (30) days of this Order, a

6. The Government had originally assessed this property at $419,202.00 for the 1999–2001 tax bills. (Plts.' Ex. 22.)

7. This property received a farmland exemption of 95 percent of its taxes for its 2001. (Coffelt Test., Jan. 28, 2003 at 46.)

refund of $24,800.82 for the overpayment of its 1996 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment to be refunded within thirty (30) days of this Order, a refund of $11,401.68 for the overpayment of its 1997 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment to be refunded within thirty (30) days of this Order, a refund of $17,959.08 for the overpayment of its 1998 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment to be refunded within thirty (30) days of this Order, a credit of $21,480.05 for its overpayment of its 1999 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment, and a credit of $21,174.86 for its overpayment of its 2000 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment; it is further

**ORDERED** that Parcel 19H Estate Smith Bay shall have a value of $125,000.00 and a tax liability of $46.87 for its 1999 tax bill, a value of $125,000.00 and a tax liability of $46.87 for its 2000 tax bill, and a value of $125,000.00 and a tax liability of $46.87 for its 2001 tax bill; it is further

**ORDERED** plaintiff Gordon Coffelt is entitled to a credit of $313.18 for his overpayment of his 1999 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment, a credit of $313.18 for his overpayment of his 2000 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment, and a credit of $313.18 for his overpayment of his 2001 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment; it is further

**ORDERED** that Parcel 19–1–3 Smith Bay shall have a value of $37,000.00 and a tax liability of $277.50 for its 1999 tax bill, a value of $37,000.00 and a tax liability of $277.50 for its 2000 tax bill, and a value of $37,000.00 and a tax liability of $13.87 for its 2001 tax bill; it is further

**ORDERED** plaintiff Gordon Coffelt is entitled to a credit of $2,866.52 for his overpayment of his 1999 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment, a credit of $2,866.52 for his overpayment of his 2000 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment, and a credit of $688.16 for his overpayment of his 2001 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment; and it is further

**ORDERED** that the values and tax liabilities for plaintiffs' properties for their tax bills up to and including 1998 are the actual values and tax liabilities. The values and tax liabilities for plaintiffs' properties for their tax bills from 1999 and later shall remain in effect until such time as the Special Master certifies the Territory's property tax system will produce credible and reliable actual values.