# GLORIA WESTON JOSEPH, MARJORIE WESTON SMITH, DORIS WESTON TODMAN, JOHN I. WESTON JR., DR. WARREN SMITH, LUDVIG GIBBS, and ADLEINE GIBBS, Appellants

## v.

## EPHRAIM HENRY and ANN HENRY, Appellees

D.C. Civ. App. No. 96-93

T.C. Civ. No.104-1996

District Court of the Virgin Islands

Div. of St. Thomas and St. John

March 14, 1997

GREGORY H. HODGES, ESQ., (DUDLEY, TOPPER AND FEUERZEIG), St. Thomas, U.S.V.I., *for Appellants*

ALAN D. SMITH, ESQ., (HODGE & FRANCOIS), St. Thomas, U.S.V.I., *for Appellees*

MOORE, *Chief Judge*, FINCH and STEELE, *Judges*

## OPINION OF THE COURT

PER CURIAM

In this appeal, appellants ["Henrys"] challenge the Territorial Court's decision (a) finding that appellants breached their contract of sale by violating restrictive covenant; and (b) granting injunctive relief to appellees based on the breach. For the reasons cited below, we find no clear error in the Territorial Court's finding that a breach occurred. However, we hold that the trial court erred in finding that the breach was intentional. Finally, because no intentional breach was exhibited and because appellees have an adequate remedy at law, injunctive relief was not merited. We therefore affirm in part and reverse in part, the Territorial Court's Judgment dated May 13, 1996.

## FACTS

This appeal arises from a bench trial and judgment in favor of appellees. The case originates from the settlement of a District Court action regarding the sale of real property. Under the terms of the settlement, counsel for the parties negotiated[1] a contract for the Henrys to buy a life estate in Parcel No. 6 AC Estate St. Joseph and Rosendahl, St. Thomas, Virgin Islands from appellees

---

[1] The parties were not involved in the face-to-face negotiations of the Contract. Appendix ["App."] at 218, 311.

["Westons"].[2] The contract was signed on April 28, 1993 and on August 19, 1993, the Henrys received the deed to the life estate incorporating by reference the terms and conditions of the contract.[3] Section 5(c) of the contract is the focus of this appeal.

In 1968, even before the controversy arose which prompted the original District Court action, the Henrys built a wooden house on the parcel. Then after the Henrys had received their deed, Hurricane Marilyn destroyed the house on September 15, 1995, leaving only the concrete foundation, cistern and septic tank.[4] The Henrys developed plans to rebuild their home out of concrete block,[5] obtained a building permit and began reconstruction on January 14, 1996. On January 23, 1996, the Westons informed the Henrys that they were violating their agreement and demanded that they stop construction.[6] The next day, the Westons' attorney notified the Henrys in writing that section 5(c) of the Contract only allowed them to rebuild a "comparable" structure, which meant they could only rebuild a "wood" house. Rebuilding with cinder block was a violation of the contract.[7] The Henrys did not agree and continued construction.

On February 13, 1996, the Westons sued the Henrys in Territorial Court for breach of contract, and moved for a Temporary Restraining Order ["TRO"], preliminary and permanent injunctions. On February 15, 1996, the trial judge issued a TRO, directing appellants immediately to cease further construction of a cinder block structure. A hearing was held on February 26-27, 1996, at which time both parties agreed that the term "comparable" is unambiguous. The Henrys, however, contended that "comparable" mean "similar size and use", and the Westons argued it meant "small

---

[2] In addition to the life estate, the contract provided for the heirs of the Henrys to enjoy an additional five year term after the demise of both of the Henrys, "provided, however that in no event shall the Interest be less than a term of ten years from the date [the contract was executed]." App. at 12-13.

[3] App. at 26.

[4] App. at 277-78.

[5] App. at 277-78, 288-89.

[6] App. at 290-291.

[7] App. at 33-35.

wooden house". The pertinent portion of section 5(c) of the contract states that

> in the event of an Act of God or other accident requiring the Purchasers to obtain a building permit from the Government of the Virgin Islands, Sellers shall have the right to review any and all applicable plans, maps or surveys with respect to the application for the building permit. If the Purchasers elect to rebuild, then the Purchasers shall only rebuild a structure comparable to the structure in existence at the time of the destruction.

App. at 16 (emphasis added).

After considering all the evidence, the trial court decided that the word "comparable" was unambiguous and that it meant "wooden structure", as well as "similar size and use", in the context of the Contract.[8] The judge concluded that the Henrys were violating the restrictive covenant by erecting a cinder block structure on the parcel.[9] Accordingly, the court ordered the Henrys to cease and desist all current and future construction of a cinder block structure, and to remove all rebuilding materials used and intended to be used from the property. This timely appeal followed.

### DISCUSSION

This Court has appellate jurisdiction over the Territorial Court's final judgment pursuant to V.I. CODE ANN. tit. 4, § 33.

**Breach of Contract**

*The Word "Comparable" Is Unambiguous*

■ Appellants claim first that the Territorial Court erred when it concluded that the unambiguous term "comparable" in section 5(c) of the contract meant "wooden structure". Construction and interpretation of clear or unambiguous contracts require plenary

---

[8] App. at 395, 401.

[9] The hearing on the preliminary injunction was consolidated with a trial on the merits pursuant to FED. R. CIV. P. 65 (a)(2), made applicable to the Territorial Court by to TERR. CT. R. 7. APP. at 47-49.

review because they "involve mixed questions of law and fact."[10] The trial court's interpretation of the parties' intent with respect to an unambiguous prevision in a contract is a question of fact, which can only be set aside if it is clearly erroneous.[11]

■■ When determining whether a contract term is unambiguous, the Territorial Court, and this Court, should "consider the words of the agreement, alternative meanings suggested by [the parties, together with any] evidence offered in support of those meanings."[12] A court can find that a term is clear or ambiguous only after it examines the circumstances and facts and fairly concludes that to give the word any other meaning would be an impermissible rewriting of the contract. Of course, "in the absence of some contrary indication, . . . English words are read as having the meaning given them by general usage, if there is one."[13]

Nothing in the record indicates that the trial court did not apply the above-stated factors in its review. The parties, and the Henrys' attorney who negotiated the contract, testified. The attorney testified that there were no negotiations regarding the specific materiel to be used should reconstruction become necessary, although he was concerned "about having flexibility in terms of being able to rebuild."[14] Gloria Weston Joseph testified that she and her family "[made] allowances for remodeling, improvements . . . . That was okay as long as it remained the same."[15] Mr. Henry testified that "comparable" to him meant same size and use.[16] Moreover, the Henrys introduced a copy of a letter exchanged by the attorneys

[10] Gulf Trading Corp. v. National Enterprises of St. Croix, Inc., 33 V.I. 129, 912 F. Supp. 177, 179 (D.V.I. APP. 1996); accord, U & W Industrial Supply, Inc. v. Martin Marietta Alumina, Inc., 30 V.I. 460, 468, 34 F.3d 180, 185 (3d Cir. 1994).

[11] V.I. CODE ANN . tit. 4, § 33; Gulf Trading Corp. v. National Enterprises of St. Croix, Inc., 912 F. Supp. at 179; The clearly erroneous standard of review for findings of fact demand great deference to the trial court's finding because only the trial judge can be aware of "variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 574, 84 L. Ed. 2d 518, 105 S. Ct. 1504 (1985).

[12] Accord, Kroblin Refrigerated Xpress, Inc. v. Pitterich, 805 F.2d 96, 101 (3d Cir. 1986) [citing Mellon Bank, N.A. v. Aetna Business Credit, Inc., 619 F.2d 1001, 1011 (3d Cir. 1980)).

[13] RESTATEMENT (SECOND) OF CONTRACTS § 202 cmt. e (1981).

[14] App. at 260-261.

[15] App. at 212-213.

[16] App. at 312.

119

during contract negotiations, and signed by the Westons' attorney, which stated that the Westons' "primary objective is to make it abundantly clear that no further improvement or expansion of the Premises will be made by the [Henrys]."[17]

At the insistence of the Henrys' attorney, a provision drafted by the Westons attorney that the Henrys could only rebuild "the same superficiary structure as presently existing . . ." was deleted and the clause "comparable to the structure in existence" was substituted in the final contract. The transcript shows that the trial judge considered the evidence presented by the parties when making his conclusion. In addition to the evidence presented, the court considered the general meaning of "comparable" according to Roger's, Thesaurus, that "comparable" means "similar or akin".[18]

### The Word "Comparable" Means Wooden Structure

When determining the meaning of the word "comparable", the trial judge looked to the plain language of the contract and considered whether either of the alternative meanings presented by the parties were reasonable in the context of the contract.[19] As a result, he rejected the alternative of the Henrys that "comparable" only meant "similar size and use". The judge concluded that the word "comparable" as used in the contract meant both similar in size and use, and "wooden structure".[20]

Though there is nothing in the record to support it, the Territorial Court seems to have assumed that the parties contemplated or negotiated the type of material to be used for rebuilding. We find this assumption does not constitute reversible error, however, since the trial court's finding may only be overruled if we determine it is clearly erroneous.

---

[17] App. at 99.

[18] App. at 394. According to Webster's Dictionary, we note that "comparable" means "like or equivalent". WEBSTER'S II DICTIONARY 289 (1984).

[19] App. at 397, 400. *Accord, Kroblin Refrigerated Xpress, Inc. v. Pitterich*, 805 F.2d at 101 [examining negotiation proposals and extrinsic evidence to find the nonexistence of any ambiguity); *Mellon Bank, N.A. v. Aetna Business Credit, Inc.*, 619 F.2d at 1011 (looking at the evidence presented rather than the trial judge's subjective definition of the term because "it is only by this approach that courts can achieve consistency in contract interpretation").

[20] App. at 397-98. *See* RESTATEMENT (SECOND) OF CONTRACTS § 202 cmt. e (1981) (defining the word by its prevailing meaning).

■ Based on the testimony provided, a facial reading of the contract, other evidence, and a reasonable interpretation that "comparable" does not only mean "similar size and use", but also similar material, "wood", the trial court's finding is not clearly erroneous. The trial judge decided that no other structure would compare to a "wooden structure". After reviewing the evidence submitted, we find that the trial court's findings were consistent with the evidence. Any erroneous assumption on the trial judge's part that the parties contemplated the material that would be used for reconstruction was harmless. By failing to limit their reconstruction materials to wood, we agree that the Henrys breached the contract.

## Injunctive Relief

Appellants also challenge the trial court's finding of intentional breach of their implied duties and the contract's restrictive covenant. On these points, we disagree with the trial court's conclusion that appellants intentionally disregarded their contractual obligations and that the Westons therefore were entitled to injunctive relief.

### Necessary Requirements

■ Preliminary injunctions are granted at the discretion of the court. "The denial or issuance of injunctive relief is reviewed . . . for abuse of discretion, the determinations that are prerequisite to issuing the injunction are reviewed according to the appropriate standard[,] [and] thus, questions of law are given plenary review."[21] There are four requirements for injunctive relief which must be satisfied before injunctive relief can be ordered:
(1) the party moving for injunctive relief will suffer irreparable harm if injunctive relief is not forthcoming;
(2) there is a probability of ultimate success on the merits;
(3) the harm likely to be inflicted upon the moving party outweighs any harm that is likely to be suffered by the non-moving party if said injunctive relief is not awarded; and

---

[21] *Estate of Enfield Green Owner's Assoc., Inc. v. Francis*, 31 V.I. 245, 247 (D.V.I. App. 1995).

(4) the grant of the requested relief will not negatively impact upon the public interest.

■ When a defendant's action are found to be intentional, a court is not required to balance the hardships.[22] "Indeed, courts have deemed the application of the balancing test as "improper' in such instances and the offending party is said to have acted at his own peril."[23] We hold that the trial judge's findings that the Henrys actions were intentional and that they acted at their own peril were clearly erroneous. Accordingly, all four factors had to be considered and applied by the Territorial Court, including a balancing of the equities. In particular, "injunctive relief against violation of the obligation arising out of a promise respecting the use of land will be denied if the harm done by granting the injunction will be disproportionate to the benefit secured . . . ."[24]

*Irreparable Harm*

■ Applying the four-factor analysis, we look first to the issue of irreparable harm. The trial judge concluded that the Westons would suffer irreparable harm if the Henrys were allowed to rebuild because it "would violate the terms . . . and the spirit of the agreement and make the agreement a nullity . . . ."[25] The court reasoned that it would injure the Westons to have something on the property which will revert to them after the Henrys life estate which they "didn't bargain for and they have a right to have what they had bargained for . . . ."[26] We reject the trial court's determination that this amounted to irreparable harm because the Westons clearly have an adequate remedy at law. Having a cinder block rather than a wooden house on their property simply does not constitute irreparable harm to the Westons.

*Success on Merits*

The second factor, success on the merits, has been satisfied, since we agree that the Henrys breached the contract.

---

[22] *Id.* at 248.

[23] *Id.*

[24] RESTATEMENT OF PROPERTY § 563 (1944).

[25] App. at 408.

[26] App. at 410.

## Balancing of Hardship

As noted, the trial court did not apply the third factor, balancing the parties' relative hardships because the judge found the Henrys' breached was intentional.

Appellants contend, and we agree, that the Territorial Court erred when it decided the Henrys intentionally breached their duty by failing to provide copies of rebuilding plans and failing to seek the Weston's approval before beginning reconstruction. The trial court found that a requirement that the Henrys give notice was implicit in the contract and that such a notice requirement implied a corresponding right to pre-approve the plans[27]

After reviewing the record on appeal, we conclude that there is no "pre-approval" or "notice" requirement stated in or Implicit in section 5(c).[28] To the extent that it is ambiguous on this point, the record shows that a clause which would have required the Henrys to obtain the Westons' consent before getting a building permit was specifically negotiated out of the contract at the insistence of the Henrys' attorney.[29] In addition, the uncontradicted evidence, including both parties' testimony, belies any "notice" or "pre-approval" requirement. The trial court's finding hat the Henrys needed the Westons' "pre-approval" before reconstruction could begin, amounts to a judicial rewriting of the contract.[30]

After considering all the evidence, the contract simply required the Henrys to allow the Westons to review their plans if and when the Westons asked to do so. The evidence was that the house and any reconstruction activity on the parcel was next to the road and open for all to view. Such open reconstructive activity on the parcel

---

[27] App. at 402.

[28] App. At 16.

[29] A letter from the Westons' attorney dated June 9, 1992, proposed that section 5(c) provide that, "in the event of an Act of God or other accident requiring the Purchasers to obtain a building permit from the Government of the Virgin Islands, then the Purchasers shall first obtain the consent of the Sellers, which consent may be granted at the Seller's sole discretion." App. at 98. This language was stricken from the final, signed contract at the insistence of the Henrys' attorney.

[30] Only when the parties' intent is not clear is it permissible for the court to supply "a term which is reasonable in the circumstances." *See* RESTATEMENT (SECOND) OF CONTRACTS § 204 (entitled, "supplying an omitted essential term [for contract interpretation]").

is the only notice the contract required the Henrys to give to the Westons.[31]

When the relative harms are weighed, the harm of having a cinder block house rebuilt on land of which the Westons will not regain possession for at least another six years is clearly outweighed by the harm the Henrys will suffer if forced to cease construction and remove the cinder block structure. As we have noted, the Westons have an adequate remedy at law.

### Public Interest

The fourth factor, namely, the impact on the public interest, is minimally implicated in this case. We do not agree with the trial court's suggestion that the public's interest requires injunctive relief to make a party whole in a breach of contract action. The impact of a contract dispute primarily affects the individuals, not the public's interest. If the public interest plays any role in this contract dispute, it would favor citizens being able to build safer houses to withstand hurricanes, and keep the occupants from requiring public assistance for shelter.

Based on this analysis, the evidence fails to justify an award of injunctive relief. The Territorial Court erred by granting injunctive relief because appellees have an adequate legal remedy and did not suffer irreparable harm. We conclude that the trial court abused its discretion by enjoining the Henrys from reconstructing with cinder block and by mandating that what had been built must be removed.

### CONCLUSION

We hold that the Territorial Court's interpretation of "comparable" to mean "wooden structure" was reasonable, based on the evidence. We therefore affirm the trial court's finding that the Henrys breached the contract by rebuilding with cinder block. We

---

[31] Having already concluded that there was no underlying requirement of notification and pre-approval, we cannot find that the Henrys breached their duty of good faith and fair dealing, nor does the Henrys' failure to rebuild a "comparable" wooden structure rise to the level of bad faith or unfair dealing. We thus rule that the trial court erred by finding that the Henrys breached their duty of good faith and fair dealing.

124

reverse that portion of the judgment granting injunctive relief because the court's finding that the Henrys intentionally breached the contract was clearly erroneous. Once the equities are balanced, there is no basis for equitable relief to the Westons.

We therefore affirm in part, reverse in part, and remand this case for further proceedings on the contract action. An appropriate order follows.

### ORDER OF THE COURT

PER CURIAM

AND NOW, this 14th day of March, 1997, after careful review of the record and having considered the arguments and the submission of the parties; and for the reasons set forth in the Court's accompanying Opinion of even date;

IT IS ORDER that the Territorial Court's Judgment dated May 13, 1996 is AFFIRMED in part and REVERSED in part, and the matter is REMANDED to the Territorial Court for further proceedings consistent with this opinion.