**EQUIVEST ST. THOMAS, INC., Plaintiffs,**

v.

**GOVERNMENT OF the VIRGIN ISLANDS, and Roy Martin, in his official capacity as Tax Assessor, Defendants.**

No. Civ.2001–155.

District Court, Virgin Islands, D. St. Thomas Division and St. John.

June 18, 2002.

---

William S. McConnell, Chad C. Messier, St. Thomas, U.S.V.I., for plaintiff.

Wayne G. Anderson, AAG, Nandi Sekou, AAG, Kerry E. Drue, AAG, St. Thomas, U.S.V.I., Richard M. Prendergast, AAG, St. Croix, U.S.V.I., for defendant.

## MEMORANDUM

MOORE, District Judge.

In the continuing saga of unlawful property tax assessments, Equivest St. Thomas, Inc. ["Equivest" or "plaintiff"] has moved for a preliminary injunction enjoining Roy Martin ["Martin"], the Virgin Islands Tax Assessor, under 42 U.S.C. § 1983 ["1983"], and the government and Martin [collectively "defendants"], under 5 V.I.C. § 80, from assessing and collecting real property taxes on certain commercial property in the Virgin Islands until such taxes and assessments are redetermined based on the "actual value" of each property in accordance with 48 U.S.C. § 1401a and 33 V.I.C. § 2404. Defendants opposed the application and moved to dismiss the case. The Court heard evidence and argument on June 5, 2002 and took the matter under advisement. I will now deny the defendants' motion to dismiss and will grant plaintiff's application for preliminary injunction in part and deny it in part.

## I. FACTUAL BACKGROUND

Equivest[1] is a corporation organized and existing under the laws of the United States Virgin Islands with its principal place of business in St. Thomas, where it owns certain commercial real estate on St. Thomas, commonly known as Bluebeard's Castle ["Bluebeard's"], Bluebeard's Beach Club ["Beach Club"], and the Elysian Resort ["Elysian"]. Each resort has typical hotel amenities, including swimming pools, restaurants, lobbies and tennis courts. Each resort also has timeshare units that plaintiff sells to the general public.

For the year 2000, the Government of the Virgin Islands, through Martin, assessed the total value of these three properties at $98,429,948.00 and sent Equivest a bill for approximately $740,000.00. Equivest contends that the defendants' assessment far exceeds the actual value of these properties. In support of its argument, Equivest offered evidence of a 1999 appraisal of the properties obtained during the sale of the properties from Kosmas Group International, Inc. ["Kosmas"], to plaintiff's predecessors. This appraisal assessed the value of the three properties at $38,250,000.00. Equivest also introduced the actual sales price of $22,516,502 for the three properties when its predecessors bought them from Kosmas. Finally, plaintiff submitted a third value for the properties of $19,585,152.47, which takes into account the sale of timeshare units since the 1999 purchase.

The complaint alleges and the evidence shows that Martin based his assessment of the value of the three hotel properties on the replacement cost of the properties calculated by multiplying the square footage of the existing structures by $110 per square foot and based the value for the timeshare units on the somewhat arbitrary values stated in the condominium declarations for the respective resorts.[2]

## II. DISCUSSION

### A. Defendants' Motion to Dismiss

#### 1. Lack of Subject Matter Jurisdiction

Equivest alleges that, by not assessing properties on their "actual value," the defendants are violating a federal statute, which prescribes the method of determining the value of real property upon which the Virgin Islands assesses its local property taxes.[3] In particular, plaintiff notes that federal law requires the tax assessor to use "actual value" as the basis for computing property tax in the Virgin Islands. *See* 48 V.I.C. § 1401a. The defendants counter that Virgin Islands property taxes are governed solely by 33 V.I.C. § 2404 and, thus, no federal question arises on which this Court can have jurisdiction. As I recently detailed the history of 48 U.S.C.

---

1. Equivest is the successor by merger to Bluebeard's Castle, Inc. and Castle Acquisitions, Inc. These entities merged to form Equivest, St. Thomas, Inc. on November 1, 2001.

2. For instance, Martin separated Bluebeard's Castle timeshare and hotel properties and assessed each property using a different methodology—i.e. replacement cost and declaration value. (Tr. Hr'g on Pl.'s Mot. for Prelim.Inj. at 67–8, June 5, 2002); (*see also id.* at 69–70 (using the same assessment system for the hotel and timeshare properties at the Beach Club and the Elysian).)

3. Since the subject of this lawsuit is a federal statute and not a local, territorial tax, it is not barred by the State Tax Injunction Act, 28 U.S.C. § 1341 ("The district courts shall not enjoin, suspend, or restrain the assessment, levy, or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."). *Compare 35 Acres Assocs. v. Adams,* 36 V.I. 270, 274–75, 962 F.Supp. 687, 690 (D.Vi. 1997) (holding that stamp tax imposed on privilege of recording deed on the territory's land records is local, non-federal tax covered by State Tax Injunction Act).

§ 1401a and 33 V.I.C. § 2404 in *Berne Corporation v. Government of the Virgin Islands*, 120 F.Supp.2d 528, 531–33 (D.Vi. 2000), there is no need to rehash the story here.

■ What does bear repeating, however, is that section 2404 of title 33 of the Virgin Islands Code

did not supercede the federal law or remove the local property tax from federal control. The federal requirement under section 1401a that the tax assessor use "actual value" in assessing the tax remains in force and is unaffected by its territorial implementation. The Virgin Islands Legislature merely complied with what the United States Congress required.

The easiest way to understand that 48 U.S.C. § 1401a continues to control the valuation of real property for application of territorial taxes is to examine whether the Virgin Islands Legislature could amend 33 V.I.C. § 2404 to eliminate the requirement that real property taxes "shall be computed on the basis of the actual value of such property." The Virgin Islands derives its legislative authority solely from the Congress, which has extended that power only to those "rightful subjects of legislation not in-

consistent with . . . the laws of the United States made applicable to the Virgin Islands." Clearly the territorial lawmakers could not eliminate or vary the "actual value" requirement Congress has imposed.

*Berne*, 120 F.Supp.2d at 532–33.[4] As Congress has lawfully imposed upon the Virgin Islands under section 1401a the requirement to assess real property according to its actual value and section 1401a is still controlling in this jurisdiction,[5] I find that the plaintiff and its complaint are properly before this Court.[6] Therefore, I will deny defendants' motion to dismiss for lack of subject matter jurisdiction.

## 2. Failure to Exhaust Administrative Remedies

Unlike the plaintiffs in *Berne*, Equivest never filed an appeal with the Virgin Islands Board of Tax Review. The defendants claim that this failure to exhaust its administrative remedies is fatal to Equivest's cause of action. I disagree.

■ For the doctrine of exhaustion of administrative remedies to apply, an effective remedy through the administrative process is essential. Unfortunately, my brothers on the bench and I have consistently been compelled to conclude that the Board of Tax Review has not provided a

---

**4.** I agree with the government's reasoning that section 1401b was not meant to continue into perpetuity on account of the language of that section. *See* 48 U.S.C. § 1401b (setting the assessment calculation of Virgin Islands property "[u]ntil local tax laws conforming to the requirements of this Act [48 U.S.C. § 1401–1401e] are in effect"). Thus, the enactment of 33 V.I.C. § 2404 necessitated the abrogation of section 1401b. The government, however, takes its argument one step too far in arguing that 33 V.I.C. § 2404 abrogated section 1401a as well. As is clear from the language of sections 1401a and 1401b and my analysis in *Berne*, only the federal method of calculating the assessment of local property set forth in section 1401(b) ceased to exist upon the enactment of 33 V.I.C. § 2404, not

the federal mandate to assess such property using actual value. Thus, the government's abrogation argument is without merit.

**5.** The Congress has plenary authority under the Constitution to govern the United States Virgin Islands. *See* U.S. Const art. IV, § 3, cl. 2 ("The Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States. . . .").

**6.** Relying on my analysis in *Berne*, I also find that Equivest has a valid section 1983 action. *See Berne*, 120 F.Supp.2d at 533–34 (finding that section 1401a creates a federally protected right actionable under section 1983).

remedy to property owners for at least twenty years. *See Anchorage Assoc. v. Virgin Islands Bd. of Tax Review,* 922 F.2d 168, 171 (3d Cir.1990) (noting the Tax Board's "remarkable record of delay and institutional incompetence"); *Berne Corp. v. Government of the Virgin Islands,* Civ. No.2000–141, 2000 WL 1689787, at \*1, 2000 U.S.Dist. LEXIS 16683, at \*3 (D.Vi. Oct.12, 2000) (noting the Tax Board's "inability and recalcitrance" in following statutory mandates); *Berne,* 120 F.Supp.2d at 535 n. 15 (finding that "the Virgin Islands does not provide a 'plain, speedy, and efficient remedy' to resolve the disputed assessment" despite the Tax Board's mandate under 33 V.I.C. § 2452 to hear appeals within sixty days of filing); *Anchorage Assoc. v. Virgin Islands Bd. of Tax Review,* Civ. No.1984/287, 1991 U.S.Dist. LEXIS 20005, at \*18 (D.V.I. Feb. 6, 1991) (finding that the Tax Board's excessive delay was a constitutional violation of procedural due process); *Maloney v. Board of Tax Review,* 17 V.I. 326, 328 (D.V.I.1980) (stating that "the Court is cognizant of the Board's failure to comply with the statutory time limits for holding a hearing and rendering a decision on petitioner's appeal."). Since the Tax Board has abdicated its responsibility to provide administrative review of tax appeals, it would be utterly pointless to require plaintiff to appeal its case to the Tax Board before suing in court. Therefore, as I find that no remedy was available, plaintiff properly brought its case straight to court.[7]

## B. Plaintiff's Application for Preliminary Injunction

■ Equivest seeks a preliminary injunction to restrain the government and its tax assessor from illegally assessing and collecting property taxes in violation of 48 U.S.C. § 1401a and 33 V.I.C. § 2404. Moreover, the equitable nature of 5 V.I.C. § 80 inherently authorizes injunctive relief. Ordinarily, four factors govern this Court's exercise of its discretion to issue a preliminary injunction: whether movant can establish (1) a reasonable probability of success on the merits, (2) irreparable harm if the relief is denied, and (3) no greater harm to the nonmoving party plus (4) service to the public interest if the relief is granted. *See Berne,* 120 F.Supp.2d at 536; *Joseph v. Henry,* 36 V.I. 115, 121–22, 958 F.Supp. 238, 243 (D.V.I.App.Div.1997). Finding that the plaintiff has met its burden of proof for some of the properties, I will grant its motion in part.

### 1. Plaintiffs Are Likely to Succeed on the Merits

As previously noted, federal law requires the tax assessor to use "actual value" as the basis for computing property tax in the Virgin Islands. *See* 48 U.S.C. § 1401a. All nine factors contained in 33 V.I.C. § 2404(a)[8] "are to be considered" in

---

**7.** In addition, it is not entirely clear whether a taxpayer must appeal to the Tax Board before bringing an action in the courts. Section 2451(a) of title 33 of the Virgin Islands Code ["Code"] merely states that "[a]ny person aggrieved by the action of the assessor in relation to the value of his property *may* make written complaint thereof to the Board of Tax Review." 33 V.I.C. § 2451(a) (emphasis added). In the same vein, section 80 of title 5 of the Code provides that "[a] taxpayer may maintain an action to restrain illegal or unauthorized acts by a territorial officer or employee, or the wrongful disbursement of territorial funds." 5 V.I.C. § 80. The inclusion of the word "may" in both statutes suggests that a taxpayer has the discretion to bring its complaint before either tribunal. As the courts of the Virgin Islands are fully operational, while the Tax Board is not, Equivest cannot be faulted for bringing this action for judicial relief.

**8.** Title 33, Section 2404 of the Virgin Islands Code presently reads:

computing the actual value of property subject to taxation. *See Berne*, 120 F.Supp.2d at 536; *Equity Inv. Corp. v. Government of the Virgin Islands*, 19 V.I. 180, 182 (D.V.I.1982). "Capitalization of income" may be used in conjunction with these nine factors to assess commercial property. *See* 33 V.I.C. § 2404(b).

 In the June 5th hearing, Martin testified that his office used replacement cost in assessing the values of the hotel properties for Bluebeard's, Beach Club and the Elysian and used the declaration value in assessing the values of the time-share units. (Tr. Hr'g on Pl.'s Mot. for Prelim.Inj. at 62–87, June 5, 2002.) Despite his concession that the use of replacement cost does not reflect fair market value and the fact that 48 U.S.C. § 1401a and 33 V.I.C. § 2404 both require use of actual value, Martin reasserted his view that replacement cost is a permissible method of assessing real property in the Virgin Islands. (*Id.* at 71, 76.) Moreover, Martin unconvincingly tried to assert that "replacement cost distills all of the factors [in section 2404]." (*Id.* at 85.) I have already rejected this transparent attempt to fit the assessor's illegal method to the federal requirement; and I reject it again.

Replacement cost is not equivalent to "actual value," nor is it one of the ten factors listed in section 2404. It is merely the number of square feet multiplied by a replacement cost per square foot. Further, plaintiff['s] evidence that the tax assessor's valuation was several times the properties' appraised value under generally accepted methods would likely persuade a trier of fact that the tax assessor did not use "actual value" in assessing plaintiffs' properties. *Berne*, 120 F.Supp.2d at 536. Therefore, I find that Equivest has shown that it would likely succeed on the merits for the hotel properties assessed using replacement cost.

The use of the values stated in the condominium declarations, on the other hand, does not appear to have caused the plaintiff any harm for it seems that the declared value of a timeshare unit is often below its sale price, a difference that would work in plaintiff's favor. Accordingly, I cannot find that the tax bills for the plaintiff's timeshares are based on an illegal method of assessment.

(a) In computing the *actual value* of real property subject to taxation, the assessor *shall take in consideration* all of the following elements and incidents—
(1) location and surroundings;
(2) quality or fertility;
(3) condition of structures;
(4) recent cost to the present owner;
(5) recent sale price of adjacent property;
(6) recent bona fide offer;
(7) accessibility;
(8) proximity to public facilities, conveniences and utilities; and
(9) rental or income derived directly from the property.
(b) If the property being assessed is commercial property, the assessor may utilize a capitalization of income method of assessment in conjunction with utilization of the factors listed in subsection (a) of this section so long as the utilization of such method results in a greater assessment than if it is not utilized. For purposes of this section, the "capitalization of income method" is a method of assessing commercial property by the conversion of rent to the real property value by the utilization of a capitalization rate applicable to the type of property involved. Determination of the capitalization rate shall be made by the Tax Assessor of the Virgin Islands after careful consideration of the comparable rate used by lending institutions.
(c) The tax assessor may promulgate any rules necessary for the implementation of this chapter.
33 V.I.C. § 2404 (emphasis added.)

## 2. Plaintiff Has Established Irreparable Harm

Plaintiff asserts that money damages are inadequate. It will suffer irreparable harm if it is forced to pay its tax bill because it would be forced to close some properties, lay off employees and lose the time-value of money since the government does not pay prejudgment interest. *See* 5 V.I.C. § 426(b). Defendants counter that all the harm Equivest claims it will suffer can be adequately compensated by its legal remedy for monetary damages at a trial on the merits. *See Acierno v. New Castle County,* 40 F.3d 645, 655 (3d Cir.1994) (stating that if the plaintiff "succeeds on the merits of his claim, we believe that economic loss, if it occurs, can be measured in monetary terms and satisfied by a damage award after trial on the merits.").

Under ordinary circumstances, the availability of a tax refund suit would probably negate a claim of irreparable harm. *See Alexander v. "Americans United", Inc.,* 416 U.S. 752, 762, 94 S.Ct. 2053, 40 L.Ed.2d 518 (1974); *Bob Jones University v. Simon,* 416 U.S. 725, 746, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974). This case, however, does not involve ordinary circumstances. As I have already found here and in *Berne,* the actions of the Tax Assessor's Office in assessing property taxes are transparently unlawful. Therefore, I find that a mere refund suit is not an adequate remedy under these circumstances and conclude that Equivest will suffer irreparable harm unless a preliminary injunction is in place. *See Estate of Michael by Michael v. Lullo,* 173 F.3d 503, 510 (4th Cir. 1999).

In the alternative, even if Equivest were unable to establish irreparable harm, I reaffirm my earlier holding that plaintiff need not show irreparable harm, because the very remedy provided by 5 V.I.C. § 80 is equitable in nature. *See Berne,* 120 F.Supp.2d at 536. Section 80 itself authorizes injunctive relief to restrain or enjoin violations of law. *See id.* The Court of Appeals for the Third Circuit has rejected the rule that plaintiffs must show special pecuniary damages to themselves different in character from the damages suffered by all taxpayers, since

> the Virgin Islands statute imposes no such requirement. Moreover [that] rule ... seems to us inconsistent with the basic concept of a taxpayer's suit to the extent that it requires a plaintiff to show special personal damage other than the prospect which he shares with other taxpayers....

*Smith v. Government of Virgin Islands,* 329 F.2d 131, 133 (3d Cir.1964). If no special personal or pecuniary damages are a precondition of injunctive relief, then a showing of non-monetary irreparable harm surely is not needed. *See Berne,* 120 F.Supp.2d at 536.

## 3. Balance of Harm and Public Interest Favor Plaintiff

The balance of harm and the public interest both favor enjoining the government from assessing property taxes in violation of federal and local law. Indeed, these two factors inherently favor the plaintiffs in a taxpayer suit, since the purpose of section 80 is "to obtain the aid of the district court to restrain any illegal acts of territorial authorities," and it "merely requires a showing that [plaintiffs] are territorial taxpayers." *see Smith,* 329 F.2d at 131, 133. Further, it is undeniable that the public interest weighs in favor of enjoining the government from violating federal law. *See St. John–St. Thomas Hotel & Tourism Ass'n, Inc. v. Government of the Virgin Islands,* 41 V.I. 317, *rev'd on other grounds,* 218 F.3d 232 (3d Cir.2000) (noting that the public has an interest in the executive branch's compliance with federal law). Moreover, any harm to the defendants will be minimized by an early trial

on the merits, which this Court will set for a date in the near future.

## C. Unclean Hands

Finally, I am appalled by the unmitigated gall of government counsel to suggest that plaintiff does not come to court with clean hands. (Reply to Pl.'s Opp. to Def.'s Mot. to Dismiss for Lack of Subject Matter Juris. at 9–12.) It is especially galling since I have given the government all the benefit of the doubt in staying these commercial property tax cases [9] that all challenge the same illegal tax assessment system, and giving Martin and his staff time to devise and implement a new tax assessment system pursuant to the government's settlement in *Berne* —a process that will take at least another year to be fully operational. The government nonetheless continues to assess commercial property taxes in the same unlawful manner, refuses to recognize the illegality of its tax bills on these properties, and has not made good faith efforts to resolve the current tax bills pending reassessment and adjustment of taxes once the new assessment system is in place. For example, the government agreed and stipulated [10] in *Miller Properties v. Government*, Civ. No.2001–151, to issue tax clearance letters to Miller Properties [11] in return for Miller Properties' assurances that it would remain liable for any additional real property taxes to be owed upon reassessment under the new system. Despite this agreement and stipulation, the Commissioner of Finance, Bernice Turnbull, has nevertheless refused to release the necessary documents.[12] Given the defiance of the Commissioner of Finance and the refusal of the government to recognize here what it has acknowledged elsewhere, it is the government's hands that are dirty.

What has become clear to me is that the government has changed its position. Rather than putting all its efforts into correcting the tax assessment process and

9. Among the pending cases challenging the tax assessment system are: *Miller Properties, Inc. v. Government*, Civ. No.2001–151; *Schmidt v. Government*, Civ. No.2001–181; *Cyril V. Francois Associates, LLC v. Government*, Civ. No.2001–196; and *Shell Seekers, Inc. v. Government*, Civ. No.2001–197.

10. At the June 5th hearing, the government characterized the agreement and stipulation in *Miller Properties* as something the parties "were working on ... that [they] hoped, had it worked out; ... would have [been] used" in this case with Equivest. (Tr. Hr'g on Pl.'s Mot. for Prelim.Inj. at 18, June 5, 2002.) Thus, government counsel gave the Court the distinct impression that they were still negotiating with Miller Properties, but that negotiations had fallen through. Government counsel failed to inform the Court and Equivest that they had actually executed an agreement with Miller Properties on May 24th, a full twelve days before the hearing.

11. Miller Properties is in the process of selling the Buccaneer Mall and Orange Grove Apartments in St. Croix and needs the tax clearance letters to enable the purchaser to record the deeds for these properties.

12. At the hearing, government counsel obfuscated Commissioner Turnbull's refusal to issue tax clearance letters by saying that she only refused to issue these letters because section 121 of title 28 of the Virgin Islands Code requires that all property taxes be paid before property can be conveyed. (*Id.* at 19.) Considering that the government's new commercial property consultant, Kenneth Voss, conducted recent appraisals of the Buccaneer Mall and Orange Grove and valued these properties at $4.5 million and $2.1 million, respectively—each well less than the government's assessment on which the tax bills are based of $7.3 million and $5.1 million, respectively—it is clear that Miller Properties has overpaid its property taxes. Since it is unlikely that Miller Properties will owe additional taxes, the Commissioner's refusal to issue the tax clearance letters is even more appalling. Therefore, it is very hard for this Court not to conclude that someone in the executive branch of the Virgin Islands Government is acting in consummate bad faith.

negotiating settlements on unlawfully assessed properties, the government now seems to want to litigate these matters. Accordingly, I may have to reconsider my January 31st order staying discovery in the tax assessment cases and let these matters proceed summarily to trial.

## IV. CONCLUSION

The enactment of 33 V.I.C. § 2404 does not supersede the federal mandate under section 1401a that the tax assessor use *actual value* as the basis for computing property tax in the Virgin Islands. Therefore, I will deny the defendants' motion to dismiss plaintiff's complaint for lack of subject matter jurisdiction. In addition, I will deny the defendants' motion to dismiss for plaintiff's failure to exhaust its administrative remedies because no viable administrative recourse is presently in place. Finally, I will grant plaintiff's motion for preliminary injunction on the taxes assessed against the plaintiff's hotel properties based on replacement value. The defendants are enjoined from collecting property taxes on the hotel properties in question unless the property or properties are assessed in accordance with 48 U.S.C. § 1401a and 33 V.I.C. § 2404. I will deny the remainder of plaintiff's motion for preliminary injunction because I find that it will not succeed on the merits. A trial on the merits will be set promptly after consultation of the parties with the magistrate judge.

## ORDER

For the reasons set forth in the accompanying memorandum of even date, it is hereby

**ORDERED** that defendants' motion to dismiss (Docket No. 31) is **DENIED with prejudice;** it is further

**ORDERED** that plaintiff's motion for preliminary injunction (Docket Nos. 7 and 29) is **GRANTED** in part and **DENIED** in part; the Government of the Virgin Islands and Roy Martin, tax assessor, are enjoined from collecting property taxes against the hotel properties owned by Equivest St. Thomas, Inc. until the tax assessor can establish at a trial on the merits that the property taxes on those properties have been assessed on their actual value in accordance with 48 U.S.C. § 1401a and 33 V.I.C. § 2404; and it is further

**ORDERED** that a trial on the merits will be set with the date to be announced.