**EQUIVEST ST. THOMAS, INC. Plaintiffs,**

v.

**GOVERNMENT OF THE VIRGIN ISLANDS, and Roy Martin, in his official capacity as Tax Assessor, Defendants.**

No. CIV.2001–155.

District Court, Virgin Islands, D. St. Thomas and St. John.

Aug. 13, 2003.

Chad C. Messier, Esq., St. Thomas, VI, for Plaintiff.

Wayne G. Anderson, Esq., Kerry E. Drue, Esq., Carol Thomas–Jacobs, Esq., Michael S. McLaurin, Esq., St. Thomas, VI, for Defendants.

## MEMORANDUM

MOORE, District Judge.

On May 12, 2003, I found the Territory's property tax system unlawful because it "systemically employ[ed] a method of assessment not calculated to determine the actual value of properties as required by 48 U.S.C. § 1401a." *Berne Corp. v. Government of the Virgin Islands*, 2003 WL 21078073, at *15 (D.Virgin Islands May 12, 2003) [*Berne Corp. II* ]. Accordingly, I entered a decree in the consolidated portion of this litigation awarding injunctive and other such relief common to all parties. All that remains for resolution is application of this decree to the unique facts posed in this individual case brought by plaintiff Equivest St. Thomas, Inc. ["Equivest"], including Equivest's request for declaratory relief regarding the actual value of four parcels of commercial real property it owns.

Preliminarily, however, I must address the Government's conduct in filing its proposed findings of fact in this case. Rather than bring something fresh to the table, the Government continues to rely on the same stale arguments that I and the Court of Appeals have rejected every time they have been raised in this and the other related cases.[1] For example, the Government again argues that this Court lacks subject matter jurisdiction without acknowledging that this Court and the Third Circuit Court of Appeals have ruled to the contrary. *See Bluebeard's Castle, Inc. v. Government of the Virgin Islands*, 321 F.3d 394 (3d Cir.2003); *Equivest St. Thomas v. Government of the Virgin Islands*, 208 F.Supp.2d 545 (D.Vi.2002) [*"Equivest I"*]; *Berne Corporation v. Government of the Virgin Islands*, 120 F.Supp.2d 528, 531–33 (D.Virgin Islands 2000). The Government dredges up its "unclean hands" argument that I specifically rejected in *Equivest I*, and the Court of Appeals similarly found to be without validity in affirming my ruling. *See Bluebeard's Castle*, 321 F.3d at 397 n. 4. Likewise, the Government repeats its earlier contention that the Jurisdictional Exception Rule of USPAP applies, again without any recognition that my rejection of this same argument in the consolidated portion of this case is the law of the case. *See Berne Corp. II*, 2003 WL 21078073, at *28.

The Government's continued re-hashing of old and rejected arguments leads me to one of two conclusions. Either the Government has never actually read the decisions of this Court or the Court of Appeals[2] or it wilfully has chosen to ignore

1. I fail to see why the Government needed an extension of time to respond to Equivest's proposed findings of fact when it appears that the Government simply re-submitted its proposed findings of fact from the consolidated portion of this case with a few minor changes.

2. Apparently, the Government does not read the Virgin Islands Code either. Not only have I repeatedly rejected its argument that the failure of one of Equivest's experts to obtain a license to conduct property appraisals in the Territory renders her testimony inadmissible, but the Code specifically exempts experts who testify to real property value in court. Had the Government read 27 V.I.C. § 449(c)(4), it would have known that the Territory's licens-

them. Neither is a comforting thought. For if the first conclusion holds true, then the Government and its lawyers are simply inept. If, however, the second conclusion more resembles the basis for the Government's conduct, then its lawyers have come dangerously close to breaching their professional and ethical responsibilities. By merely re-submitting identical pleadings that I and/or the Court of Appeals have previously rejected, without acknowledging the contrary and at this stage binding rulings let alone providing any analysis of binding authority in this jurisdiction, counsel for the Government have arguably breached their good faith duty to assert meritorious claims as required by Rule 3.1 of the ABA Model Rules of Professional Conduct, which has been adopted in this jurisdiction. *See* LRCi 83.2(a)(1).

In any event, as the Government has offered nothing new, and I am no more persuaded by its arguments now than I was in the consolidated portion of this case, I summarily reject the Government's hackneyed arguments, adopt my previous findings and rulings, and incorporate those findings and rulings by reference here in Equivest's individual case.

## I. FINDINGS OF FACT AND CONCLUSIONS OF LAW

Equivest, the successor by merger to Bluebeard's Castle, Inc. and Castle Acquisitions, Inc., is a Virgin Islands corporation that owns three resorts located on St. Thomas known as Bluebeard's Castle, Bluebeard's Beach Club, and Elysian Beach Resort. Although Equivest views each of its resorts as a separate "property" for valuation purposes, the Tax Assessor considers each resort as comprised of several separate taxable parcels to which he has assigned separate tax identification numbers ["tax parcel ID numbers"] for separate assessment and billing. I list only four of the parcels, as they are the only properties on which I entered a preliminary injunction due to apparent over-assessments and whose assessments Equivest continues to dispute. *See Equivest I,* 208 F.Supp.2d at 550.[3] The following lists each of the four resorts, the separate tax parcel ID numbers, and describes the property in disputer:

| Resort | Tax Parcel ID No. | Description |
| --- | --- | --- |
| Bluebeard's Castle | 1–05402–1026–00 | Non–timeshare property containing lobby, administrative buildings, commercial lease areas, excess land, recreational amenities/common areas [hereinafter "non-timeshare property"] |
| | 1–05402–1030–00 | Undeeded timeshare inventory—Hilltop Villas |
| Bluebeard's Beach Club | 1–07403–0103–00 | Non–timeshare property |
| Elysian Beach Resort | 1–07803–0407–00 | Non–timeshare property |

ing laws for real estate appraisers are inapplicable to "any person who testifies to the value of real estate or real property in the courts of the Territory."

**3.** Equivest has paid, or otherwise accepted and elected not to contest, the values and corresponding tax derived by the Tax Assessor's Office with respect to the non-enjoined properties.

For the 2000 property tax bill, the Tax Assessor's illegal assessments produced the following tax bills for these four parcels:

| Parcel No. | Assessed Value | Tax |
|---|---|---|
| 1–05402–1026 | $30,799,578.00 | $230,996.84 [4] |
| 1–5402–1030 | $ 8,046,643.00 | $ 60,349.82 [5] |
| 1–07403–0103 | $10,211,705.00 | $ 76,587.79 |
| 1–07803–0407 | $ 8,728,405.00 | $ 65,463.04 |

For the 2001 property tax bill, the Tax Assessor generated the following illegal assessments with the corresponding tax liabilities for these same properties:

| Parcel No. | Assessed Value | Tax |
|---|---|---|
| 1–05402–1026 | $30,604,533.00 | $229,534.15 |
| 1–5402–1030 | $ 7,993,408.00 | $ 59,950.56 |
| 1–07403–0103 | $10,116,273.00 | $ 76,247.05 |
| 1–07803–0407 | $ 8,640,852.00 | $ 64,809.39 |

At the individual trial of this case on January 9, 2003 and January 29, 2003, Equivest presented testimony and evidence that the Tax Assessor's assessments of Equivest's properties were plagued by the same problems I noted in the consolidated case. In particular, Equivest's vice-president and regional chief financial officer, Gwen Parrish, testified that the Tax Assessor committed numerous errors with respect to all three resort properties, including (1) taxing structures that were not located on the parcel being taxed, (Parrish Test., Jan. 29, 2003, at 14, 19, 25, 39, 48), (2) taxing phantom structures that did not exist, (Id. at 28–29), (3) using a more recent year of construction than the actual year of construction, which lessened depreciation and therefore increased valuation, (Id. at 15, 21, 26–27, 30, 46), (4) improperly updating the "effective year" of construction for buildings that had not been renovated or remodeled and that in fact were run down and in need of significant repair, which also artificially increased the assessed values by manipulating depreciation, (Id.), (5) using excessively long depreciation life spans for the purpose of increasing valuation, which in many cases inexplicably increased from 80 years to 110 years between 1996 and 2001, (Id. at 16, 22, 24, 27–28, 31, 37–39, 41–43, 47), (6) taxing certain improvements twice, (Id. at 50), and (7) using completely unrealistic replacement costs, such as assessing two tennis courts at $1,584,557, more than 14 times their total insured value of $110,000, (Id. at 32–33).

Equivest's two experts, Kathleen Conroy and Steven Santora, further testified that (1) the land values ascribed by the Tax Assessor to Equivest's properties were significantly overstated, (Santora Test., Jan. 29, 2003, at 94–101), (2) the only accepted method for valuing Equivest's

---

4. The Tax Assessor originally assessed this parcel at $48,718,792.00 and sent Equivest a 2000 tax bill for $365,390.94. He later withdrew this tax bill and replaced it with the one listed above.

5. The Tax Assessor originally assessed this parcel at $12,422,904.00 and sent Equivest a 2000 tax bill for $93,171.78. He later withdrew this tax bill and replaced it with the one listed above.

timeshare inventory is the income method, a method not employed by the Tax Assessor and currently proscribed by local statute unless it renders a higher assessment, (Conroy Test., Jan. 9, 2003, at 292–293), (3) the actual value of the non-timeshare parcels, i.e., restaurants and gift shops, should be derived by ascertaining the value of any commercial lease relating to these areas, (Santora Test., Jan. 29, 2003, at 78–83; Conroy Test., Jan. 9, 2003, at 289–293, 327–328), and (4) the common areas should not be taxed separately as those areas lack market value and are already taxed through the bills to individual timeshare owners and to Equivest for its unsold timeshare inventory, (Santora Test., Jan. 29, 2003, at 81–83; Conroy Test., Jan. 9, 2003, at 318–321).

■ The Government, on the other hand, presented no testimony or evidence to defend its valuations of Equivest's property. Instead, the Government quibbled for an inordinate amount of time over the distinctions between the terms "actual value" and "market value", unsuccessfully sought to strike Conroy's testimony because she did not have a Virgin Islands license to conduct appraisals, and simply asked the Tax Assessor whether he was satisfied with his assessments. With no evidence to justify the Tax Assessor's assessments, I find Equivest's testimony to be credible and the Government's testimony self-serving and incredible. Accordingly, having incorporated my earlier findings from the consolidated portion of this case by reference, I reiterate that "the system of assessment as presently established and operated by the Tax Assessor is structurally incapable of equitably and reliably implementing the federal statutory mandate of taxing all real property on its actual value," *see Berne II,* 2003 WL 21078073, at *15, and, in actual application to the four Equivest properties, has failed to produce

reliable or equitable assessments of their actual or fair market values. Thus, all that remains is to determine a suitable remedy for Equivest's four individual properties.

## II. REMEDIES

### A. General Remedial Approach For the Individual Plaintiffs

Although I will address the Territory-wide injunction separately, I again reiterate my recognition that the Government is entitled to collect revenue from property taxes—it just cannot do so based solely on the illegal system of assessment presently in place. Indeed, I had suggested to the Government in the summer of 2002 that it compromise with the plaintiffs on the amount of property taxes in dispute, which the plaintiffs would pay with the understanding that the tax bills would be adjusted retroactively once the tax assessment system is satisfactorily revised under the *Berne* settlement. This would have avoided a costly, time-consuming, and embarrassing trial. More to the point, it would have allowed the Government to continue to collect property tax revenues without interruption while correcting the assessment system which it acknowledged in the *Berne* case needed fixing. Unfortunately, the Government was unwilling to compromise on these assessed values and bull-headedly chose instead to charge ahead with this litigation, which it has lost on all fronts. When faced with the overwhelming evidence of the unlawfulness of the Tax Assessor's property assessments, I had no choice but to issue a Territory-wide injunction preventing the Government from continuing to operate an illegal system with no provision to adjust for the Territory's property taxpayers.

Yet within my May 12, 2003 Decree, I suggested that the Government would be able to collect property taxes by issuing the 1999 [6] through 2004 tax bills based on

6. Although property in the Virgin Islands is

assessed on a calender year basis, the assess-

the illegal 1998 assessment values if it provided a mechanism to adjust the assessments and bills retroactively by giving credits for overpayment and issuing supplemental bills for underpayments once the Special Master has certified that the Territory's tax assessment system as equitably and reliably assessing real property at its actual value and the tax years from 1999 forward have been reassessed. The Virgin Islands has finally responded to this suggestion with the passage of Act No. 6586, which the Governor signed into law on July 14, 2003 and provides sufficient relief to warrant the modification of the injunction.[7]

■ In the interest of a uniform system with which to credit or bill all of the Territory's real properties for interim tax payments once the property tax system has been fixed, I will make final determinations in the individual tax cases of the values of the properties litigated by the individual plaintiffs up to and including the 1997 assessments reflected in the 1998 tax bills based on the evidence presented in the trial of each individual plaintiff's case. Any plaintiff that has overpaid its taxes for this period based on my findings will be entitled to a refund and to interest on any overpayments at the statutory rate of 12 percent per annum. *See Chase Manhattan Bank, N.A. v. Government of the Virgin Islands,* 300 F.3d 320, 323 (3d Cir. 2002) (noting that the 12 percent statutory rate under 33 V.I.C. § 1251 applies to property taxes).

For the 1999 and later tax bills, I will accept the plaintiffs' proffered values as good faith estimates of their tax obligations and order the Government to treat these values as the assessed values of these properties until the Special Master has certified the Territory's assessment system to be capable of assessing properties at their actual value. At its option, an individual plaintiff may either pay to the Government the sum of its respective good faith estimate *or* withhold such payment without penalty or interest until the Tax Assessor has reassessed and established the actual value of its property. If a plaintiff chooses the latter option, however, it must pay all of its outstanding taxes within 60 days after the new reassessed bills are issued.

Any plaintiff that determines it has overpaid its property tax bills for 1999 and later will be entitled to a credit and interest at the statutory rate of 12 percent per annum. The Government may not unilaterally, that is, without plaintiff's consent, apply this credit to any of plaintiffs' estimated future tax liabilities until such time as the Special Master has certified the Territory's assessment system to be capable of assessing properties at their actual value. The Government at its option at any time may refund such credit and interest to any plaintiff.

### B. Equivest's Remedies

Turning now to the case at hand, Equivest was exempt from property taxes up to and including the 1998 assessment reflected in the 1999 tax bill and thus is only entitled to relief for the later years. Equivest has proffered the following values and

---

ment roll on which tax bills are issued is established as of January 15 of the following year, when the Tax Assessor determines the ownership of all properties. *See* 33 V.I.C. §§ 2301(a), 2405(a). Accordingly, the 1999 property tax bill was based on the 1998 assessment level.

7. *See In re Tax Litig.,* Civ. No.2000–141, 2003 WL 21956169 (D.Virgin Islands Aug. 13, 2003) (Order) (lifting the May 12, 2003 injunction prohibiting the Government from collecting property taxes in regard to all non-plaintiff taxpayers, but maintaining the injunction in full force and effect for all parties to this litigation).

tax liabilities for each of the four tax ID parcels it litigated for the tax bills pending for 2000 and 2001:

| Parcel No. | Assessed Value | Tax Liability (2000) |
|---|---|---|
| 1–05402–1026 | $3,200,000.00 | $24,000.00 |
| 1–5402–1030 | $ 368,992.00 | $ 2,767.44 |
| 1–07403–0103 | $1,736,000.00 | $13,020.00 |
| 1–07803–0407 | $1,505,000.00 | $11,287.50 |
| Total 2000 Estimated Bill: | | $51,074.94 |

| Parcel No. | Assessed Value | Tax Liability (2001) |
|---|---|---|
| 1–05402–1026 | $3,200,000.00 | $24,000.00 |
| 1–5402–1030 | $ 375,856.00 | $ 2,818.92 |
| 1–07403–0103 | $1,736,000.00 | $13,020.00 |
| 1–07803–0407 | $1,505,000.00 | $11,287.50 |
| Total 2001 Estimated Bill: | | $51,126.42 |

I accept these as good faith estimates and declare them to be the actual values and the related tax liabilities to be what Equivest owes in lieu of the 2000 and 2001 property tax bills for these properties, pending reassessment. Therefore, Equivest may, at its option, either remit its estimated tax liability of $51,074.94 for 2000 and $51,126.42 for 2001 to the Government or chose to remit full payment of its reassessed tax liability within 60 days after revised tax bills are issued upon the Special Master's certification that the Territory's tax assessment system is capable of equitably and reliably assessing properties at their actual value.

## DECREE

Having considered the entire record in this matter, including the testimony and documentary evidence presented at the trial on January 9 and 29, 2003, and based on the Memorandum of even date, it is hereby,

**DECREED** that the Tax Assessor's Office has failed to assess and tax the litigated properties of plaintiff Equivest at their actual value.

The Court further enters the following remedial orders:

**ORDERED** that Parcel Number 1–05402–1026–00 shall have a value of $3,200,000.00 and a tax liability of $24,000.00 for its 2000 and 2001 tax bills; it is further

**ORDERED** that Parcel Number 1–05402–1030–00 shall have a value of $368,992.00 and a tax liability of $2,767.44 for its 2000 tax bill; it is further

**ORDERED** that Parcel Number 1–05402–1030–00 shall have a value of $375,856.00 and a tax liability of $2,818.92 for its 2001 tax bill; it is further

**ORDERED** that Parcel Number 1–07403–0103–00 shall have a value of $1,736.000.00 and a tax liability of $13,020.00 for its 2000 and 2001 tax bills; it is further

**ORDERED** that Parcel Number 1–07803–0407–00 shall have a value of $1,505,000.00 and a tax liability of $11,287.50 for its 2000 and 2001 tax bills; and it is further

**ORDERED** that these values and tax liabilities shall remain in effect until such time as the Special Master certifies the Territory's property tax system will produce credible and reliable actual values.